[No. H027848. Sixth Dist. July 5, 2005.]

THE BOARD OF PRISON TERMS, Petitioner, v.
THE SUPERIOR COURT OF SANTA CLARA COUNTY, Respondent;
VIET MIKE NGO, Real Party in Interest.

[No. H028006. Sixth Dist. July 5, 2005.]

THE BOARD OF PRISON TERMS, Petitioner, v.
THE SUPERIOR COURT OF SANTA CLARA COUNTY, Respondent;
ROLANDO GAOIRAN, Real Party in Interest.

[No. H028022. Sixth Dist. July 5, 2005.]

THE BOARD OF PRISON TERMS, Petitioner, v.
THE SUPERIOR COURT OF SANTA CLARA COUNTY, Respondent;
DANIEL BETTENCOURT, Real Party in Interest.

[No. H028070. Sixth Dist. July 5, 2005.]

THE BOARD OF PRISON TERMS, Petitioner, v.
THE SUPERIOR COURT OF SANTA CLARA COUNTY, Respondent;
DONALD RAY LEWIS, Real Party in Interest.

**1220**

COUNSEL

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Frances T. Grunder, Assistant Attorney General, Anya M. Binsacca, Virginia I. Papan, Elizabeth S. Kim, Song J. Hill and Denise A. Yates, Deputy Attorneys General, for Petitioner.

No appearance for Respondent.

Keith Wattley, under appointment by the Court of Appeal, for Real Parties in Interest Viet Mike Ngo and Roland Gaoiran.

Heather MacKay, under appointment by the Court of Appeal, for Real Parties in Interest Daniel Bettencourt and Donald Ray Lewis.

OPINION

**BAMATTRE-MANOUKIAN, Acting P. J.—**

## I. INTRODUCTION

In these original proceedings, the Board of Prison Terms (Board) seeks extraordinary relief from the superior court's orders to show cause issued in the habeas corpus proceedings pertaining to Viet Mike Ngo (*In re Ngo,* case No. 127611), Rolando Gaoiran (*In re Gaoiran,* case No. 105491), Daniel Bettencourt (*In re Bettencourt,* case No. 79903), and Donald Ray Lewis (*In re Lewis,* case No. 68038.) The Board contends that the superior court exceeded its jurisdiction when it issued orders to show cause that require the Board to respond to claims not expressly raised in the habeas corpus petitions. The Board also contends that the superior court exceeded its jurisdiction when, on its own motion, it incorporated a discovery order in the orders to show cause in the Ngo and Gaoiran cases. The discovery orders require the Board to produce the decision pages for all of the several thousand Board parole suitability hearings that were held in 2003.

For reasons that we will explain, we will issue peremptory writs of mandate vacating the orders to show cause and the discovery orders and

directing the superior court to reconsider its rulings in accordance with the views expressed in this opinion.

## II. FACTUAL AND PROCEDURAL BACKGROUND

The Board filed writ petitions seeking extraordinary relief from the superior court's orders to show cause issued in the habeas proceedings pertaining to Viet Mike Ngo (*In re Ngo,* case No. 127611), Rolando Gaoiran (*In re Gaoiran,* case No. 105491), Daniel Bettencourt (*In re Bettencourt,* case No. 79903), and Donald Ray Lewis (*In re Lewis,* case No. 68038) (collectively, real parties in interest or real parties). Since the four writ petitions similarly challenge the superior court's authority to issue an order to show cause that requires the Board to respond to claims not expressly raised in the habeas corpus petition, we ordered that these original proceedings be considered together for purposes of an order to show cause, briefing, oral argument, and decision. We also stayed all superior court proceedings while our writ review was pending. A brief summary of the factual and procedural background of each matter follows.

### A. *The Ngo Matter (H027848)*

In 1988, when he was 18 years old, Viet Mike Ngo killed a 14-year-old boy in a drive-by shooting. While a passenger in an automobile traveling on Highway 101, Ngo fired four bullets into a nearby vehicle, striking and fatally injuring the victim. Ngo pleaded guilty to second degree murder (Pen. Code, § 187)[1] in 1989, and he was sentenced to 15 years to life in prison.

### *Parole Board Decision*

The Board held a parole suitability hearing on October 7, 2003. At the conclusion of the hearing, the Board issued a two-year denial of parole suitability. The denial was based on the Board's finding that Ngo's release from prison would pose an unreasonable risk of danger to public safety, in light of the especially cruel and callous nature of the murder and Ngo's inexplicable motive. The Board also determined that Ngo was unsuitable for parole based on his escalating pattern of criminal conduct and his need for additional prison programming.

### *Habeas Corpus Petition*

Ngo filed a petition for writ of habeas corpus in propria persona in the superior court in which he challenged the Board's denial of parole. The

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

habeas corpus petition states the following 11 issues: "1. The Board failed to apply the statutory requirements of Penal Code [section] 3041. [¶] 2. His Due Process Rights were violated by the Board's failure to set a term, abide by the term set at his Initial Parole Consideration Hearing and consider the crime as no more than a Second Degree Murder. [¶] 3. The Board improperly and arbitrarily characterized [Ngo's] crime as being carried out in 'an especially cruel and callous manner' and 'in a dispassionate and a calculated manner.' The Board violated the contractual plea bargain entered into by [Ngo] and the State of California whereby he pled guilty to a Second Degree Murder. Moreover the Board ignored the evidence which disputes a finding that the crime was calculated. [¶] 4. That there was no evidence before the Board that [Ngo] now presents a danger to society. [¶] 5. There was no evidence underlying the reasons the [Board] panel gave for finding [Ngo] unsuitable for parole, nor was there evidence in the record to support a finding that it would be unreasonable to expect that parole would be granted at a hearing during the next two years. [¶] 6. The Panel was operating under a 'no-parole' policy and its decision was based on political considerations and a policy put into effect by then Governor Davis. [¶] 7. The Panel's decision was arbitrary and capricious and ignored or minimized [Ngo's] rehabilitative efforts and gains. The Panel's recommendations regarding necessary programming lack any basis in the record for their purported 'need.' [¶] 8. The Board improperly used dismissed, unproven, and unsubstantiated charges and an administrative rules violation as reasons to find [Ngo] unsuitable for parole. [¶] 9. The Board's finding that the motive for [Ngo's] crime was inexplicable is arbitrary and capricious and ignores the record in this case. [¶] 10. The Board's finding that [Ngo's] behavior is unpredictable was based on allegations against him which were unproved or dismissed and on what the Panel termed mere 'suspicions'. The finding is thus arbitrary and capricious and violated [Ngo's] Due Process and Equal Protection Rights. [¶] 11. The Life Prisoner Evaluation Report prepared by Counselor Kirkpatrick improperly assessed [Ngo's] violence potential based on unproved, unsubstantiated and dismissed allegations. [¶] The evaluation by Counselor Kirkpatrick exceeded authority granted to Correctional Counselors by the Department's Administrative Manual. The Board improperly used this assessment and report."

In his points and authorities in support of the habeas corpus petition, Ngo also argued that the Board violated due process by denying parole to approximately 98 percent of inmates, although section 3041, subdivision (a), provides that the Board "shall normally set a parole release date." Further, Ngo claimed that the Board's failure to fix his prison term at a number of years proportional to his crime violated his federal due process rights.

*Order to Show Cause*

On August 4, 2004, the superior court issued an order requiring the Attorney General, as attorney for the Board, to show cause why Ngo was not entitled to the relief sought in his habeas corpus petition. The order included the following statement of the issues: "It appears the Board has recharacterized the crime as first degree murder and that is the basis of its decision to deny parole. In the habeas corpus petition of Peter Honesto, [case No.] 98079, this Court explained in detail why this, apparently routine, Board action violates the due process clause. The Honesto order will be attached to this order and Respondent should address the cases and analysis discussed therein as they are identically applicable here."

The "Honesto order" attached to the order to show cause is the order granting the petition for writ of habeas corpus in *In re Honesto*, case No. 98079, filed April 13, 2004 (hereafter, the Honesto order). The 14-page Honesto order remanded the matter to the Board for a new hearing on the ground that the Board had erred in recharacterizing Honesto's crime as first degree murder in violation of Honesto's plea to second degree murder. The superior court also determined that the evidence did not support the Board's unsuitability findings of unstable social history, arrest record, lack of letters of support, and insufficient participation in self-help programs. Further, the Honesto order included the superior court's ruling that "the Board's procedures and methods, which amount to nullification of pleas, violate the constitutional right to due process. It is not a viable answer for Respondent to suggest that their procedures and methods allow such an action."[2]

In its order to show cause in the Ngo case, the superior court made the following statement in addition to incorporating its ruling in the Honesto case: "[T]he Board is operating with a policy of bias and a predetermination to deny parole to all but the most stellar candidates after they have already exceeded their matrix time . . . [Ngo] 'contends that as a matter of law and logic a parole granting rate of two-percent by the Board fails to comply with the mandate of Penal Code [s]ection 3041 (a) which requires that parole normally be granted.' " This statement precedes a discovery order, which the superior court included in the order to show cause although Ngo had not made a motion for discovery or otherwise sought discovery prior to the issuance of the order to show cause.

The superior court's discovery order states, "[Ngo's] assertions will require a substantial evidentiary presentation. The documentary proof is in the

---

[2] The Board appealed the Honesto order. We reversed the order and remanded the matter to the superior court with directions to enter a new order denying Honesto's habeas corpus petition. (*In re Honesto* (2005) 130 Cal.App.4th 81 [29 Cal.Rptr.3d 653].)

possession of the [Board] and they will be required to provide appropriate discovery." The order describes the required discovery as follows: "To prove the violation of this rule that [Ngo] alleges, he may present evidence regarding the several thousand Board hearings conducted during the year of his denial, 2003, and the reasons given by the Board for their denials." The discovery order then compels the Board to provide Ngo's attorney with the " 'Decision' pages of every hearing held during 2003," and states, "[Ngo's] counsel may then present evidence detailing the number of times the gravity of the crime was used as a ground for parole denial." In so ruling, the superior court cited this court's decision in *In re Cortinas*, review granted on November 17, 2004, S127439, for the proposition that a " 'statistically significant' evidentiary showing is needed for these sorts of cases. . . ."

### B. *The Gaoiran Matter (H028006)*

During a family Christmas party in 1985, Rolando Gaoiran had an argument with Jose Torres in which Gaoiran believed Torres threatened his life. Gaoiran walked away, but then shot Torres two times with a handgun. After Torres fell to the floor, Gaoiran approached him and shot him in the head. Torres's family and friends were present at the Christmas party. Gaoiran pleaded guilty to second degree murder (§ 187) in 1986, and he received a sentence of 15 years to life.

### *Parole Board Decision*

A parole suitability hearing was held before the Board on December 19, 2003. At the conclusion of the hearing, the Board issued a one-year denial of parole. The Board's decision was based on its finding that Gaoiran was not suitable for parole and his release would pose an unreasonable risk to public safety. The primary reason for finding Gaoiran unsuitable was the nature of the commitment offense, which the Board described as being "carried out in a vicious and brutal manner" demonstrating "an exceptionally insensitive disregard for human suffering." The Board also found Gaoiran's motive inexplicable and trivial in relation to the offense and recommended that he participate in anger management and self-help programming.

### *Habeas Corpus Petition*

Gaoiran filed a petition for writ of habeas corpus in propria persona in the superior court, in which he challenged the Board's parole denial. The petition states the following nine issues: "1. The Board failed to comply with the statutory requirements of [section] 3041. [¶] 2. [Gaoiran's] Federal Due Process Rights were violated by the Board's failure to set a term; follow the

laws governing parole; and find him suitable for parole. [¶] 3. The Board improperly characterized [Gaoiran's] crime as being carried out in 'a vicious and brutal manner which demonstrates an exceptionally insensitive disregard for human suffering.' [¶] 4. There was no evidence before the Board that [Gaoiran] now presents a danger to society. [¶] 5. The Panel was operating under a 'no-parole' policy and its decision was based on political consider-ations and a policy put into effect by then Governor Davis. The manner in which the Board administers the parole system ignores the plain language of the statues under which [it] is obligated to function and violates Due Process. [¶] 6. The Panel's decision was arbitrary and capricious and ignored or minimized [Gaoiran's] rehabilitative efforts and gains. The Panel's recom-mendations regarding necessary programming lack any basis in the record for their purported 'need.' [¶] 7. The Board improperly used a Rules Violation Report that has no probative value as to [Gaoiran's] dangerousness as a reason to find [Gaoiran] unsuitable for parole. [¶] 8. The Board failed to provide [Gaoiran] with an interpreter in his native language and dialect and failed to take into account that statements purportedly made by [Gaoiran] to counselors and psychiatrists might have been misunderstood because English is not [Gaoiran's] native language. [¶] 9. Petitioner maintains that the Panel's weighty and unreasonable reliance on unalterable factors including the crime itself violates his Due Process rights. The Board has in effect resentenced him from a term of 15 years to life to life without the possibility of parole."

*Order to Show Cause*

On September 2, 2004, the superior court issued an order requiring the Attorney General to show cause why Gaoiran was not entitled to the relief sought in his habeas corpus petition. The order to show cause in the Gaoiran matter is very similar to the order to show cause issued in the Ngo matter, and likewise states that the issues include the Board's routine recharacteriza-tion of the crime as first degree murder and its policy to "deny parole to all but the most stellar candidates after they have already exceeded their matrix time." The superior court also incorporated the Honesto order in the Gaoiran order to show cause and directed respondent to "address the cases and analysis discussed therein as they are identically applicable here."[3]

The Gaoiran order to show cause is also similar to the Ngo order to show cause in that it includes the same discovery order, which requires the Board to produce the decision pages of every parole suitability hearing held by the Board during 2003. Additionally, in the Gaoiran order the superior court provided direction to the Board based on this court's decision in *In re Smith* (2003) 114 Cal.App.4th 343 [7 Cal.Rptr.3d 655], as follows: "[Gaoiran's] crime appears to be no more egregious than Mr. Smith's—it is instead,

---

[3] The Honesto order was not included in our record in the Gaoiran writ matter.

unfortunately, a most common example. If Respondent is going to assert that [Gaoiran's] crime is exceptional they are directed to provide some examples of murder that would not be exceptional. A refusal, or inability, to provide this perspective will be strong evidence that the Board is more concerned with maintaining its ability to operate without standards than it is in demonstrating a conscientious approach to these difficult decisions."

Finally, the Gaoiran order to show cause includes the following comments by the superior court: "This Court will also note that the Board's 'conclusion' that 'the motive for the crime was inexplicable and very trivial in relationship to the offense,' appears Kafkaesque. In the same sentence the Board announces that it cannot determine what the motive is and that it finds it to be trivial. [Fn. omitted.]" (Original underscore.) The order to show cause then directs the Board to "explain why this example of 'reasoning,' is not indicative of the Board's entire approach to [Gaoiran's] hearing."

## C. *The Lewis Matter (H028070)*

Donald Ray Lewis pleaded guilty to murder in the first degree (§ 187) in 1978. He was sentenced to life with the possibility of parole on the murder count. The murder occurred in 1977 when Lewis had a confrontation with the victim, Allen LaBonte, about a marijuana purchase. Lewis hit LaBonte on the head with a rock, crushing his skull. Lewis then took LaBonte's knife and stabbed him several times in the face and neck. After the stabbing, Lewis drove off in LaBonte's car. LaBonte's body was later discovered in a flood control channel.

### *Parole Board Decision*

A parole suitability hearing was held on December 15, 2003. The Board denied parole at the conclusion of the hearing on the ground that Lewis was not suitable for parole and his release would pose an unreasonable risk of danger to public safety. The finding of unsuitability was based largely on the circumstances of the murder, which the Board found was "carried out in an especially cruel and callous manner," with an inexplicable motive, and demonstrated "an exceptionally callous disregard for another human being." The Board also found that Lewis's pattern of escalating criminal conduct and unstable social history were factors weighing against parole suitability and recommended that Lewis upgrade vocationally and participate in self-help programming.

### *Habeas Corpus Petition*

Lewis filed a petition for writ of habeas corpus in propria persona in the superior court challenging the Board's denial of parole on eight grounds,

including "(1) The [Board] abused its discretion in finding [Lewis] unsuitable for parole without giving [Lewis] due consideration pursuant to Penal Code [section] 3041. [¶] (2) The [Board's] denial of setting a parole release date was 'arbitrary and capricious' without giving to [Lewis] individualize[d] due consideration, rather than 'Mere Pro Forma consideration' in violation of [Lewis's] due process and liberty interest rights. [¶] (3) The [Board] abused its discretion and acted 'arbitrary and capricious' from [*sic*] finding [Lewis] to be an unreasonable risk of danger to society or a threat to the public safety if released from prison. [¶] (4) The [Board] failed to have a factual finding for denial of parole from finding [Lewis's] crime to be carried out in an especially cruel, callous and dispassionate manner and that the victim was abused during the offense and the offense that was carried out in a manner that demonstrates an exceptionally callous disregard for another human being. [¶] (5) The [Board] and the representative district attorney ha[ve] failed to honor [Lewis's] plea bargain agreement of 7 years to life by failing to release him after serving the statutory seven (7) years by minimum eligible release date and the maximum twenty two (22) years according to the matrix law [*sic*] first degree murder under the indeterminate sentencing law. [¶] (6) The criteria established in California Code of Regulations Title 15, Article II, commencing with section 2281, violat[e] due process of law protected under both [*sic*] Penal Code section 3041. [Citation.] [¶] (7) The Board's continued reliance on a set of unchanging factors in order to deny [Lewis] his protected liberty interest in parole eleven (11) different times violated his due process rights protected under both California Constitution Article I, § 7, and the [F]ourteenth [A]mendment's due process clause. [¶] (8) The **'some evidence'** rule, as created and applied by the Judiciary, encroaches upon the legislative province; thereby violating, the separation of powers doctrine and due process of law protected under California Constitution Article I, § 7, and the [F]ourteenth [A]mendment to the United [S]tates Constitution." (Boldface in original.)

### Order to Show Cause

On September 21, 2004, the superior court issued an order to show cause that directed the Attorney General to "address all claims or be deemed to have conceded them," and also "highlighted several aspects of the [habeas corpus] petition which deserve special attention." The "highlighted" aspects include (1) whether the denial of parole after 25 years of incarceration violated Lewis's plea bargain, where it was "anticipated by Defense Counsel, the Deputy District Attorney, and the Superior Court that if [Lewis] behaved well in prison he would be paroled after 'maybe about 11 years, perhaps maybe even 15 years;' " and (2) "a potentially related violation of the plea in that the Board has recharacterized [Lewis's] crime as special circumstances murder and denied parole on this basis."

In addition to "highlighting" the issues, the order to show cause included directions on the showing to be made by the parties. Regarding the plea bargain issue, the superior court stated, "It appears that [Lewis] has fulfilled his part of the plea bargain. . . . The Board denied parole based entirely on events before his plea and without regard to the twenty five years he has spent honoring his understanding of the plea. In a similar situation a court has ordered an inmate's immediate release. [Citation.] If there is any dispute about the terms and understanding of the plea this Court will take evidence from those involved. The evidence can encompass both the specifics of this case and the general practices and expectations of attorneys and real parties entering pleas in murder cases during the time frame."

The superior court also incorporated the Honesto order in the Lewis order to show cause, with the following accompanying statement: "Another issue to be given particular attention is a potentially related violation of the plea in that the board has recharacterized Petitioner's crime as special circumstances murder and denied parole on this basis. It would seem to be a violation of the plea in which the Executive Branch 'stipulates' that the crime is only of the first degree for the [Board] to ignore that stipulation and recharacterize it as deserving LWOP [life without possibility of parole]. This Court recently issued a Final Order granting relief under these circumstances and Respondent is ordered to show cause on this point as well. That Final Order is attached and incorporated into this Order To Show Cause so that Respondent can understand the scope of the argument and analysis that should be presented."

The order to show cause in the Lewis habeas corpus proceeding differs from the Ngo order to show cause and the Gaoiran order to show cause because it does not include a discovery order.

### D. *The Bettencourt Matter (H028022)*

Daniel Bettencourt pleaded guilty to second degree murder (§ 187) in 1982 and received a sentence of 15 years to life. The murder took place in 1981. Bettencourt and a friend went to the home of another man, Mark Jones, to confront Jones about his relationship with a woman whom Bettencourt considered to be his girlfriend. A fight ensued and, as Bettencourt and Jones were fighting on the floor, Bettencourt's friend began stabbing Jones with a screwdriver. The friend then obtained a kitchen knife and stabbed Jones several times in the chest. Bettencourt did nothing to stop the killing and helped his friend dispose of Jones's body by dumping it over a cliff.

### *Parole Board Decision*

The Board held a parole suitability hearing on July 24, 2002. The Board denied parole after finding that Bettencourt was not suitable for parole and

his release would pose an unreasonable risk of danger to public safety. Specifically, the Board determined that the offense was carried out in an especially cruel and callous manner and for a trivial motive. The Board also took into account Bettencourt's prior criminal record, history of unstable relationships, and prison disciplinary record, and it concluded that a longer period of observation and evaluation was required. Further, the Board recommended that Bettencourt participate in drug-related and anger-management programs, noting that Bettencourt's outbursts during the hearing had caused the Board to be gravely concerned regarding Bettencourt's ability to control himself if he were to be released into the community.

### Habeas Corpus Petition

Bettencourt filed a petition for writ of habeas corpus in propria persona in the superior court, in which he sought his release on parole. He asserted three grounds for his claim that the Board had erroneously denied parole: (1) "The Board violated Penal Code [section] 3041 and [Bettencourt's] due process rights by failing to properly consider and weigh the nature of his commitment offense, including consideration of what constitutes a uniform term for like offenses, in determining his suitability for parole"; (2) "The Board's denial of a parole date for [Bettencourt] in 2002 was arbitrary and capricious because it is not supported by 'some evidence' that his release would pose an unreasonable risk to public safety"; and (3) "The Board relied upon public outcry to deny [Bettencourt] parole for four years, violating [Bettencourt's] due process rights to due consideration of his sixth parole application." (Capitalization omitted.)

### Order to Show Cause

On September 7, 2004, the superior court ordered the Attorney General to show cause why Bettencourt was not entitled to the relief sought in his habeas corpus petition. The order also includes the superior court's direction to the Attorney General to respond to the issue of whether the parole denial constituted a violation of Bettencourt's plea bargain. The order states, "Despite the weight of the evidence, the Board announced a conclusion that 'the offense was carried out in a dispassionate and calculated manner,' akin to first degree murder, and refused to set a parole date (even though [Bettencourt] has exceeded every applicable matrix designation). Need a court examine the record for 'some evidence' that the crime is first degree murder when the executive branch stipulated in the first instance that the crime would be 'fixed' and 'set' at 'second degree'? Does the Board have the power to ignore, and thus nullify, the plea? [¶] . . . [¶] Respondent should be able to explain what ultimate benefit [Bettencourt] was given. [¶] Respondent must address this, as well as every other, issue raised in the instant petition."

However, the order to show cause in the Bettencourt habeas corpus proceeding did not incorporate the Honesto final order and did not include a discovery order.

## III. DISCUSSION

### A. *Availability of Writ Relief*

█ Writ review of an interim order, such as an order to show cause, is rarely granted because an interim order is reviewable on appeal from the final judgment. However, "when the remedy by appeal would be inadequate or the issues presented are of great public importance and must be resolved promptly," writ relief is available. (*Powers v. City of Richmond* (1995) 10 Cal.4th 85, 113 [40 Cal.Rptr.2d 839, 893 P.2d 1160]; see *Litmon v. Superior Court* (2004) 123 Cal.App.4th 1156, 1166 [21 Cal.Rptr.3d 21].)

Additionally, writ review is appropriate in discovery matters where it is necessary to address "questions of first impression that are of general importance to the trial courts and to the [legal] profession, and where general guidelines can be laid down for future cases." (*Oceanside Union School Dist. v. Superior Court* (1962) 58 Cal.2d 180, 185–186, fn. 4 [23 Cal.Rptr. 375, 373 P.2d 439]; see *People v. Superior Court* (*Cheek*) (2001) 94 Cal.App.4th 980, 987 [114 Cal.Rptr.2d 760].)

In the present cases, the Board argues that appellate remedies are not adequate because the orders to show cause require the Board to spend its limited resources answering issues that real parties did not raise in their petitions and responding to improperly ordered discovery. We agree that the remedy by appeal is inadequate under the unusual circumstances of these cases.

█ Moreover, writ review is appropriate to provide guidance with respect to the following issues in the area of habeas corpus procedure: (1) whether the superior court has the authority to issue an order to show cause that requires the Board to respond to claims not expressly raised in the petition for writ of habeas corpus; and (2) whether the superior court may order discovery in a habeas corpus proceeding in the absence of a discovery request by a party. Our resolution of these issues is undertaken in the context of the statutory scheme for the Board's parole suitability decisions and is guided by the well-established procedure that governs a petition for writ of habeas corpus seeking relief from an adverse parole suitability decision.

### B. *The Statutory Scheme for Parole Suitability Decisions*

Because the Board's writ petitions all arise from habeas corpus proceedings that involve a challenge to the Board's decision that a life prisoner is unsuitable

for parole, we begin our analysis with an overview of the statutory scheme for parole suitability decisions.

■ The Board is authorized to determine whether a prisoner sentenced to an indeterminate prison term should be released on parole, in accordance with the provisions of section 3041.[4] Subdivision (b) of section 3041 provides in part: "The panel or board shall set a release date unless it determines that the gravity of the current convicted offense or offenses, or the timing and gravity of current or past convicted offense or offenses, is such that consideration of the public safety requires a more lengthy period of incarceration for this individual, and that a parole date, therefore, cannot be fixed at this meeting . . . ."

In determining whether the public safety requires the prisoner to serve a more lengthy period of incarceration rather than be released on parole, the Board is guided by the criteria listed in title 15 of the California Code of Regulations. The Board must deny parole "if in the judgment of the panel the prisoner will pose an unreasonable risk of danger to society if released from prison." (Cal. Code Regs., tit. 15, § 2402, subd. (a).) To assess that risk and thus determine the prisoner's suitability for parole, the Board must consider "[a]ll relevant, reliable information available to the panel." (Cal. Code Regs., tit. 15, § 2402, subd. (b).)

■ Included in the relevant information that the Board must take into account in determining suitability for parole are circumstances that have been termed "parole suitability factors." (See, e.g., *In re McClendon* (2003) 113 Cal.App.4th 315, 323, 6 Cal.Rptr.3d 278.) The applicable regulations include the following parole suitability factors: (1) no juvenile record; (2) a stable social history; (3) signs of remorse; (4) the motivation for the crime was significant life stress; (5) battered woman syndrome; (6) no history of violent crime; (7) age; (8) realistic plans for the future; and (9) institutional behavior. (Cal. Code Regs., tit. 15, § 2402, subd. (d).)

These parole suitability factors are not exclusive. Pursuant to section 2402, subdivision (b), of title 15 of the California Code of Regulations, the Board

---

[4] Section 3041, subdivision (a) provides in part: "One year prior to the inmate's minimum eligible parole release date a panel consisting of at least two commissioners of the Board of Prison Terms shall . . . meet with the inmate and shall normally set a parole release date as provided in Section 3041.5. . . . The release date shall be set in a manner that will provide uniform terms for offenses of similar gravity and magnitude in respect to their threat to the public, and that will comply with the sentencing rules that the Judicial Council may issue and any sentencing information relevant to the setting of parole release dates. The board shall establish criteria for the setting of parole release dates and in doing so shall consider the number of victims of the crime for which the prisoner was sentenced and other factors in mitigation or aggravation of the crime. . . ."

also may consider "any other information which bears on the prisoner's suitability for release." The Board must also consider "parole unsuitability factors," which are circumstances that "each tend to indicate unsuitability for release." (Cal. Code Regs., tit. 15, § 2402, subd. (c).) Parole unsuitability factors include: (1) the commitment offense; (2) a previous record of violence; (3) an unstable social history; (4) sadistic sexual offenses; (5) psychological factors; and (6) serious misconduct in prison or jail. (Cal. Code Regs., tit. 15, § 2402, subd. (c).)[5]

■ Recently, the California Supreme Court clarified several aspects of the statutory and regulatory criteria for parole suitability decisions. In *In re Dannenberg* (2005) 34 Cal.4th 1061 [23 Cal.Rptr.3d 417, 104 P.3d 783], the court stated, "The regulations governing murderers serving indeterminate life sentences have long provided that determination of an individual inmate's *suitability* for parole under section 3041, subdivision (b) must precede any effort to set a parole release date under the uniform-term principles of section 3041, subdivision (a)." (*In re Dannenberg, supra*, 34 Cal.4th at pp. 1079–1080.) Thus, "if the circumstances of a particular murder persuade the Board that the prisoner who committed it is presently too dangerous to grant a fixed parole release date, the Board may deny parole without deciding when the inmate will be released, and without considering how the prisoner's actual period of confinement may compare with those served by others who committed similar crimes." (*Id.* at p. 1080.)

In *Dannenberg,* our Supreme Court also rejected the notion that an inmate serving an indeterminate sentence has a " 'vested right' " to have his sentence fixed for any period less than the maximum sentence provided by statute. (*In re Dannenberg, supra*, 34 Cal.4th at p. 1097.) Further, our Supreme Court explained that the circumstances of the prisoner's offense alone may constitute a sufficient basis for denying parole, where the violence or viciousness of the prisoner's crime is "more than *minimally necessary to convict him* [or her] of the offense for which he [or she] is confined." (*In re Dannenberg, supra*, 34 Cal.4th at p.1095, original italics.)

■ The Board's ultimate decision regarding parole suitability is subject to limited judicial review under the " 'some evidence' " standard. (*In re Rosenkrantz* (2002) 29 Cal.4th 616, 652 [128 Cal.Rptr.2d 104, 59 P.3d 174].) The " 'some evidence' " standard of review is "extremely deferential." (*In re Rosenkrantz, supra,* 29 Cal.4th at p. 665.) The court may not weigh the evidence, resolve conflicts in the evidence, or consider whether the evidence

---

[5] The parole suitability criteria applicable to Lewis and other inmates convicted of committing murder prior to July 8, 1978, are set forth in California Code of Regulations title 15, section 2281, and are identical to the parole suitability criteria stated in California Code of Regulations title 15, section 2402 and discussed above.

establishing suitability for parole "far outweighs" the evidence showing unsuitability. (*Rosenkrantz, supra*, 29 Cal.4th at pp. 677, 679.) In short, the court may not substitute its own judgment for that of the Board. "[T]he court may inquire only whether some evidence in the record before the Board supports the decision to deny parole, based upon the factors specified by statute and regulation." (*Id.* at p. 658.)

### C. *The Procedure Governing Habeas Corpus*

Having considered the statutory scheme that governs parole suitability decisions, we next review the well-established procedure that governs a petition for writ of habeas corpus, including the habeas corpus petitions in the cases at bar. As the California Supreme Court has emphasized, "The rules governing postconviction habeas corpus relief recognize the importance of the 'Great Writ,' an importance reflected in its constitutional status . . . ." (*In re Clark* (1993) 5 Cal.4th 750, 763–764 [21 Cal.Rptr.2d 509, 855 P.2d 729], fn. omitted.) "Indeed, the writ has been aptly termed 'the safe-guard and the palladium of our liberties' [citation] and is 'regarded as the greatest remedy known to the law whereby one unlawfully restrained of his [or her] liberty can secure his [or her] release . . . .' [Citation.]" (*Id.* at p. 764) "The writ has been available to secure release from unlawful restraint since the founding of the state. (Cal. Const. of 1849, art. I, § 5; Stats. 1850, ch. 122, p. 134 [Citations.]" (*Ibid.*)

■ Our Supreme Court has summarized the rules governing habeas corpus relief in several decisions. In *People v. Duvall* (1995) 9 Cal.4th 464 [37 Cal.Rptr.2d 259, 886 P.2d 1252], the court stated the requirements for a habeas corpus petition. "To satisfy the initial burden of pleading adequate grounds for relief, an application for habeas corpus must be made by petition, and '[i]f the imprisonment is alleged to be illegal, the petition must also state in what the alleged illegality consists.' (§ 1474, subd. 2.) The petition should both (i) state with particularity the facts on which relief is sought [citations], [and] (ii) include copies of reasonably available documentary evidence supporting the claim, including pertinent portions of trial transcripts and affidavits or declarations. [Citations.]" (*People v. Duvall, supra*, 9 Cal.4th at p. 474.) " 'Conclusory allegations made without any explanation of the basis for the allegations do not warrant relief, let alone an evidentiary hearing.' [Citations.]" (*Ibid.*)

Our Supreme Court explained the role of the court in habeas corpus proceedings in *People v. Romero* (1994) 8 Cal.4th 728 [35 Cal.Rptr.2d 270, 883 P.2d 388]. "When presented with a petition for writ of habeas corpus, a court must first determine whether the petition states a prima facie case for relief—that is, whether it states facts that, if true, entitle the petitioner to relief—and also whether the stated claims are for any reason procedurally barred. [Citation.]"

*(People v. Romero, supra,* 8 Cal.4th at p. 737.) "To assist the court in determining the petition's sufficiency, the court may request an informal response from the petitioner's custodian or the real party in interest. [Citations.]" *(Ibid.)* "If the court determines that the petition does not state a prima facie case for relief or that the claims are all procedurally barred, the court will deny the petition outright, such dispositions being commonly referred to as 'summary denials.' [Citation.]" *(Ibid.)* "When, on the other hand, a habeas corpus petition is sufficient on its face (that is, the petition states a prima facie case on a claim that is not procedurally barred), the court is obligated by statute to issue a writ of habeas corpus." *(Ibid.;* see § 1476.)

■ Our Supreme Court has also explained the nature and function of the order to show cause, which has been authorized for use in lieu of the writ of habeas corpus. *(People v. Romero, supra,* 8 Cal.4th at p. 738.) "Judicial practice and decisions of this court have authorized one deviation from the procedure specified in the Penal Code." *(Ibid.)* "Because 'appellate courts are not equipped to have prisoners brought before them . . . this court and the Courts of Appeal developed the practice of ordering the custodian to show cause why the relief sought should not be granted.' " *(Ibid.,* quoting *In re Hochberg* (1970) 2 Cal.3d 870, 874 [87 Cal.Rptr. 681, 471 P.2d 1].) Thus, "[w]hen used as a substitute for the writ of habeas corpus, the order to show cause 'directs the respondent custodian to serve and file a written return.' " *(People v. Romero, supra,* 8 Cal.4th at p. 738.)

Accordingly, the order to show cause has a limited function. As explained in *In re Serrano* (1995) 10 Cal.4th 447 [41 Cal.Rptr.2d 695, 895 P.2d 936], the order to show cause does not "*establish* a prima facie determination that petitioner is entitled to the relief requested. Rather, it signifies our '*preliminary determination* that the petitioner has made a prima facie statement of specific facts which, if established, entitle [petitioner] to habeas corpus relief under existing law.' " *(In re Serrano, supra,* 10 Cal.4th at p. 455, quoting *In re Hochberg, supra,* 2 Cal.3d at p. 875, fn. 4.)

■ The order to show cause also directs the respondent to address the " 'claims raised in the petition and the factual bases for those claims alleged in the petition.' " *(People v. Duvall, supra,* 9 Cal.4th at p. 475.) " 'It directs the respondent to address only those issues.' " *(Ibid.)* The respondent addresses the issues in a pleading called the return. The return must " 'allege *facts* tending to establish the legality of petitioner's detention.' " *(Id.* at p. 476.) "The factual allegations . . . must also respond to the allegations of the petition that form the basis of the petitioner's claim that the confinement is unlawful. [Citations.]" *(Ibid.)* "In addition to stating facts, the return should also, 'where appropriate, . . . provide such documentary evidence, affidavits, or other materials as will enable the court to determine which issues are truly disputed.' " *(People v. Duvall, supra,* 9 Cal.4th at p. 476; see § 1480.)

After the return is filed, the petitioner replies in a pleading called a traverse, in which the petitioner must indicate whether the factual allegations in the return are admitted or disputed. (*People v. Duvall, supra,* 9 Cal.4th at pp. 476–477; § 1484.) "Facts set forth in the return that are not disputed in the traverse are deemed true. [Citation.]" (*People v. Duvall, supra,* 9 Cal.4th at p. 477.) "Conversely, '[w]hen the return effectively acknowledges or "admits" allegations in the petition and traverse which, if true, justify the relief sought, such relief may be granted without a hearing on other factual issues joined by the pleadings.' " (*Ibid.*)

 Thus, it is the parties' pleadings that define the issues. In the words of our Supreme Court, "it is through the return and the traverse that the issues are joined in a habeas corpus proceeding." (*People v. Romero, supra,* 8 Cal.4th at p. 739.) "This process of defining the issues is important because issues not raised in the pleadings need not be addressed. [Citation.]" (*People v. Duvall, supra,* 9 Cal.4th at p. 478.) Under this process, the issues to be addressed may not extend beyond the claims alleged in the habeas corpus petition. Thus, respondent may not raise additional issues in its return. (*People v. Green* (1980) 27 Cal.3d 1, 43, fn. 28 [164 Cal.Rptr. 1, 609 P.2d 468], overruled on other grounds in *People v. Hall* (1986) 41 Cal.3d 826, 834, fn. 3 [226 Cal.Rptr. 112, 718 P.2d 99].)

Similarly, a habeas corpus petitioner may not raise additional issues in the traverse. "While the traverse may allege additional facts in support of the claim on which an order to show cause has issued, attempts to introduce additional claims or wholly different factual bases for those claims in a traverse do not expand the scope of the proceeding which is limited to the claims which the court initially determined stated a prima facie case for relief." (*In re Clark, supra,* 5 Cal.4th at p. 781, fn. 16; see also *In re Connor* (1940) 16 Cal.2d 701, 711 [108 P.2d 10].) To bring additional claims before the court, petitioner must obtain leave to file a supplemental petition for writ of habeas corpus. (*People v. Green, supra,* 27 Cal.3d at p. 43, fn. 28.)

Keeping these procedural requirements in mind, we turn to the question of whether the superior court has the authority to issue an order to show cause that requires the Board to respond to claims not expressly raised by the petitioner in the petition for writ of habeas corpus.

D. *May the Superior Court Issue an Order to Show Cause That Requires the Board to Respond to Claims Not Expressly Raised in the Petition for Writ of Habeas Corpus?*

 Based on our review of habeas corpus procedure, we believe that the law regarding the issues to be determined in a habeas corpus proceeding is well settled. " '[T]he court considers only those grounds of illegality alleged

in the petition for issuance of the writ' [citation], or in any supplemental petition filed with permission of the court [citation]." (*People v. Green, supra,* 27 Cal.3d at p. 43, fn. 28; see also *In re Haygood* (1975) 14 Cal.3d 802, 805 [122 Cal.Rptr. 760, 537 P.2d 880].) No specific provision authorizes the superior court to supplement the habeas corpus petition by adding additional claims or new factual bases for existing claims in the order to show cause. However, real parties contend that authority allowing the superior court to add new claims in an order to show cause may be found in section 1484, which, in their view, expressly provides the superior court with broad authority to dispose of a habeas corpus petition "as the justice of the case may require."

### 1. *The Scope of the Court's Power Under Section 1484*

In its entirety, section 1484 provides, "The party brought before the Court or Judge, on the return of the writ, may deny or controvert any of the material facts or matters set forth in the return, or except to the sufficiency thereof, or allege any fact to show either that his [or her] imprisonment or detention is unlawful, or that he [or she] is entitled to his [or her] discharge. The Court or Judge must thereupon proceed in a summary way to hear such proof as may be produced against imprisonment or detention, or in favor of the same, and to dispose of such party as the justice of the case may require, and have full power and authority to require and compel the attendance of witnesses, by process of subpoena and attachment, and to do and perform all other acts and things necessary to a full and fair hearing and a determination of the case."

 The plain language of section 1484 expressly addresses the scope of the court's authority *after* the traverse is filed and the issues are joined. (See, e.g., *Durdines v. Superior Court* (1999) 76 Cal.App.4th 247, 252 [90 Cal.Rptr.2d 217].) Accordingly, once the court has decided that habeas corpus relief is warranted, section 1484 authorizes the court "to fashion a remedy for the deprivation of any fundamental right which is cognizable in habeas corpus." (*In re Crow* (1971) 4 Cal.3d 613, 620, fn. 7 [94 Cal.Rptr. 254, 483 P.2d 1206].) Section 1484 does not specifically provide the superior court with the power to ensure that all claims that could be raised regarding the legality of petitioner's detention have been raised, or to supplement the petition with new claims by way of the order to show cause.

The well-established rule is that "it is the *petitioner* who bears the ultimate burden of proving the factual allegations that serve as the basis for his or her request for habeas corpus relief." (*In re Serrano, supra,* 10 Cal.4th at p. 456.) Because the *petitioner* has the evidentiary burden, it is the petitioner who must select the claims that the petitioner desires to plead and prove as the grounds for habeas corpus relief. As we have discussed, our Supreme Court

has established that the process of defining the issues to be determined in a habeas corpus proceeding begins with the petitioner asserting his or her claims in a petition for writ of habeas corpus. Where necessary, the petitioner may bring new claims before the court by seeking leave to file a supplemental petition. Only those claims raised in the original habeas corpus petition or in a supplemental habeas corpus petition may be considered by the court. (*People v. Green, supra,* 27 Cal.3d at p. 43, fn. 28; see also *In re Haygood, supra,* 14 Cal.3d at p. 810.) Thus, "[t]he court will determine the appropriate disposition of a petition for writ of habeas corpus based on the allegations of the petition as originally filed and any amended or supplemental petition for which leave to file has been granted." (*In re Clark, supra,* 5 Cal.4th at p. 781, fn. 16.)

For these reasons, we conclude that the well-established rules of habeas corpus procedure provide no statutory or decisional authority that permits the superior court to issue an order to show cause that requires the respondent to address new claims not expressly or implicitly raised in the original habeas corpus petition or supported by the factual allegations in the original habeas corpus petition, unless those claims were raised by the petitioner in a supplemental or amended habeas corpus petition filed with the permission of the court.[6] This permits the petitioner to determine what claims will be raised in the habeas corpus petition.

### 2. *Analysis of the Superior Court's Orders to Show Cause*

To determine whether, as the Board claims, the superior court exceeded its power under section 1484 by ordering the Board to show cause on claims not raised in the habeas corpus petitions, we have reviewed the record in each of the cases at bar.

Our review indicates that in one case, the Bettencourt matter (H028022), the superior court added a new claim to the order to show cause, which the petitioner had not raised in his habeas corpus petition, and which could not be implied from or supported by the factual allegations in the petition. The superior court stated that the denial of parole appeared to violate Bettencourt's plea bargain, and it framed the new issue as, "Does the Board have the power to ignore, and thus nullify, the plea?" The superior court then ordered the Board to "explain what ultimate benefit [Bettencourt] was given," and to "address this, as well as every other, issue raised by the instant petition." However, our review of the record reveals Bettencourt had made no claim that the denial of release on parole violated his plea bargain.

In the other three matters, Gaoiran (H028006), Lewis (H028070), and Ngo (H027848), real parties argue that the claims the Board contends were

---

[6] We caution that our discussion of the procedure for filing a supplemental habeas corpus petition is not intended to affect the existing restrictions on filing successive habeas corpus petitions. (See, e.g., *People v. Senior* (1995) 33 Cal.App.4th 531, 537–538 [41 Cal.Rptr.2d 1].)

improperly added by the superior court could be inferred from or are supported by the factual allegations in the habeas corpus petitions. For example, in the Ngo matter (H027848), the Board argues that the superior court added a claim not expressly raised by Ngo regarding whether the Board had violated his plea bargain in elevating his commitment offense of second degree murder to first degree murder. However, Ngo asserts that he raised the same claim in his petition, by stating that "[t]he Board violated the contractual plea bargain entered into by [Ngo] and the State of California wherein he pled guilty to a Second Degree Murder."

 We will not undertake a detailed comparison of the claims asserted in the habeas corpus petitions and the issues on which the superior court issued orders to show cause, because our concern focuses on the superior court's incorporation of an order that the superior court had issued in another, unrelated case, *In re Honesto* (case No. 98079), in the orders to show cause issued in the Gaoiran (H028006), Lewis (H028070), and Ngo (H027848) matters.[7] For the reasons discussed below, we conclude that the trial court's authority under section 1484 does not permit the superior court to issue an order to show cause that requires the Board to respond to the cases and analysis included in another order issued in an unrelated case that raises some different claims.

The 14-page Honesto order granted the habeas corpus petition of Peter Honesto, a life prisoner, and remanded the matter to the Board with directions to conduct a new hearing in accordance with the superior court's instructions. The Honesto order also included the superior court's ruling that the Board's failure to release Honesto on parole had violated due process because Honesto had pleaded guilty to second degree murder in a plea bargain, but the Board had nevertheless treated his commitment offense as first degree murder and kept him incarcerated past the term anticipated for a conviction of second degree murder. Additionally, the superior court ruled that the Board had violated due process in Honesto's case by finding that he had an unstable social history and had not sufficiently participated in beneficial self-help prison programming, despite the lack of evidence to support those findings. Thus, the Honesto order concerned issues, findings and evidence particular to Honesto, which naturally had not been raised as claims by Ngo, Gaoiran or Lewis in their habeas corpus petitions.

As we have discussed, the superior court's power under section 1484 does not authorize the court to consider new claims not expressly or implicitly raised in the original habeas corpus petition or supported by the factual alle-

---

[7] At oral argument, counsel for all parties indicated that they had never before seen an order to show cause issued in a habeas corpus case that incorporated an order issued in another, unrelated habeas corpus case.

gations in the original habeas corpus petition unless those claims have been asserted in a supplemental habeas corpus petition filed with permission of the court. We find the superior court's incorporation of the unrelated Honesto order in the orders to show cause issued in the Ngo, Gaoiran, and Lewis matters, accompanied by the court's direction to the Board to respond to the court's ruling and analysis in the Honesto order, constitutes consideration of new claims that were not raised in the habeas corpus petitions, supported by the factual allegations in the habeas corpus petitions, or raised in a supplemental habeas corpus petition filed with permission of the court. We also find that the superior court's order to show cause in the Bettencourt matter added a new claim, concerning whether the denial of parole appeared to violate his plea bargain, which was not raised in Bettencourt's habeas corpus petition, supported by the factual allegations in the habeas corpus petition, or raised in a supplemental habeas corpus petition. We therefore conclude that the superior court exceeded its power under section 1484 when it issued the orders to show cause in the Ngo, Gaoiran, Lewis, and Bettencourt matters, and for that reason we will vacate the orders to show cause with directions to the superior court to reconsider its rulings in accordance with the views expressed in this opinion.

■ In so ruling, we recognize that the superior court has the authority to invite amended or supplemental habeas corpus petitions in the interests of justice. We also recognize that the superior court in crafting the order to show cause has the power to explain its preliminary assessment of the petitioner's claims, restate inartfully drafted claims for purposes of clarity, and limit the issues to be addressed in the return to only those issues for which a prima facie showing has been made. Our Supreme Court has emphasized that the goal of "the procedures that govern habeas corpus is to provide a framework in which a court can discover the truth and do justice in [a] timely fashion." (*People v. Duvall, supra*, 9 Cal.4th at p. 482.)

By way of guidance, we note that the well-established rules of habeas corpus procedure provide the superior court with the means of ensuring that the pleadings create a framework in which a court can discover the truth and do justice in a timely fashion. For example, where there are "technical irregularities" in the pleadings in a habeas corpus proceeding, a court issuing an order to show cause has the discretion to grant leave to amend. (*People v. Duvall, supra*, 9 Cal.4th at p. 482.) Similarly, where the superior court determines that the habeas corpus petition has pleading defects and believes that correction of the defects is necessary to ensure a full and fair hearing and a determination of the case, the superior court has the discretion to give notice of the defect and grant leave to amend or supplement the petition. (See, e.g., *People v. Handcock* (1983) 145 Cal.App.3d Supp. 25, 32–33 [193 Cal.Rptr. 397].)

 If the superior court grants leave to amend or supplement the petition and the petitioner files a supplemental petition that adds new claims not raised in the original habeas corpus petition, the trial court then may determine which of the claims states a prima facie case for habeas corpus relief and issue an appropriate order to show cause. The respondent must respond to the order to show cause by filing a return that addresses the prima facie claims, to which the petitioner may reply in a traverse. The issues are then properly joined in accordance with the well-established rules governing habeas corpus procedure.

We emphasize that in these cases we have decided a procedural issue, and we express no opinion as to the substantive merits of any of the four habeas corpus proceedings that underlie the Board's petitions for writ of mandate or the merits of any future requests for leave to file a supplemental or amended habeas corpus petition.

### E. *May the Superior Court Order the Board to Provide Discovery of the Decision Pages for All Parole Board Suitability Hearings in 2003?*

In two of the underlying habeas corpus proceedings, *In re Ngo* and *In re Gaoiran*, the superior court included a discovery order in the order to show cause. The discovery orders identically compel the Board to provide defense counsel with the decision pages for all of the several thousand Board parole suitability hearings that were held in 2003, which is the year Ngo and Gaoiran were denied parole. The superior court stated in each order to show cause that this discovery was necessary to allow Ngo and Gaoiran to make a "substantial evidentiary presentation" regarding the claim that the Board's "parole granting rate of two-percent" violates the mandate of section 3041, subdivision (a), that parole normally should be granted.

The superior court also explained the purpose of the decision-page discovery: "If it appears that in over ninety percent of the cases the Board stated the crime was 'exceptionally' or 'especially' 'callous,' 'dispassionate,' 'calculated,' or 'cruel,' then it would seem that the Board is using the exception to nullify the rule." The superior court also observed in the order to show cause, "If the evidence appears to suggest a finding that nearly every person['s] crime has been called exceptional, there could be a violation regarding the Board's application of the governing rules."

The Board contends that the superior court's discovery orders are improper because Ngo and Gaoiran both failed to carry their burden to make a prima facie showing for the claimed grounds of illegality, and therefore no discovery jurisdiction exists. Further, the Board argues that the discovery sought is irrelevant and will unduly burden the Board and violate third party inmates' privacy rights. Ngo and Gaoiran respond that the decision pages of all Board

parole suitability hearings held in 2003 are public records that the Board is obligated to transcribe, and on that basis they assert that production of the decision pages will not unduly burden the Board or invade any privacy rights.

To determine whether the superior court has the authority to make a discovery order in a habeas corpus proceeding in the absence of a discovery request by a party, we first look to the procedures governing habeas corpus discovery.

### 1. *The Procedures Governing Habeas Corpus Discovery*

There is no statutory authority that expressly authorizes postconviction discovery in a habeas corpus proceeding, with one exception. Section 1054.9 provides that where the habeas corpus proceeding involves a case in which a sentence of death or life in prison without the possibility of parole has been imposed, the superior court may order that the defendant be provided with discovery materials upon a showing of unsuccessful good faith efforts to obtain the discovery materials from trial counsel.[8] Accordingly, in these types of cases the defendant is entitled to seek discovery before filing a habeas corpus petition as an aid in stating a prima facie claim for relief. (*In re Steele* (2004) 32 Cal.4th 682, 691 [10 Cal.Rptr.3d 536, 85 P.3d 444].)

For other cases, in which the sentence imposed is less than death or life in prison without the possibility of parole, we are guided by the decisions of the California Supreme Court. The general rule is that discovery is available in a habeas corpus proceeding once an order to show cause has issued. (*In re Scott* (2003) 29 Cal.4th 783, 814 [129 Cal.Rptr.2d 605, 61 P.3d 402]; *In re Avena* (1996) 12 Cal.4th 694, 730 [49 Cal.Rptr.2d 413, 909 P.2d 1017].) Thus, no discovery is permitted prior to the issuance of the order to show cause,

---

[8] Section 1054.9 provides, "(a) Upon the prosecution of a postconviction writ of habeas corpus or a motion to vacate a judgment in a case in which a sentence of death or of life in prison without the possibility of parole has been imposed, and on a showing that good faith efforts to obtain discovery materials from trial counsel were made and were unsuccessful, the court shall, except as provided in subdivision (c), order that the defendant be provided reasonable access to any of the materials described in subdivision (b). [¶] (b) For purposes of this section, 'discovery materials' means materials in the possession of the prosecution and law enforcement authorities to which the same defendant would have been entitled at time of trial. [¶] (c) In response to a writ or motion satisfying the conditions in subdivision (a), [the] court may order that the defendant be provided access to physical evidence for the purpose of examination, including, but not limited to, any physical evidence relating to the investigation, arrest, and prosecution of the defendant only upon a showing that there is good cause to believe that access to physical evidence is reasonably necessary to the defendant's effort to obtain relief. The procedures for obtaining access to physical evidence for purposes of postconviction DNA testing are provided in Section 1405, and nothing in this section shall provide an alternative means of access to physical evidence for those purposes. [¶] (d) The actual costs of examination or copying pursuant to this section shall be borne or reimbursed by the defendant."

because a habeas corpus petition that does not state a prima facie claim for relief "creates no cause or proceeding which would confer discovery jurisdiction." (*People v. Gonzalez* (1990) 51 Cal.3d 1179, 1258 [275 Cal.Rptr. 729, 800 P.2d 1159]; see *In re Steele, supra*, 32 Cal.4th at p. 690.)

Our Supreme Court has also observed that "[t]he nature and scope of discovery in habeas corpus proceedings has generally been resolved on a case-by-case basis." (*In re Scott, supra*, 29 Cal.4th at p. 813.) We have found no authority that expressly provides the superior court with the power to order discovery in a habeas corpus proceeding in the absence of a discovery request by a party. However, section 1484 provides broad powers that we believe encompass the power to order discovery whether or not a party has made a discovery request. Section 1484 provides that once the order to show cause has been issued and the return has been filed, the court has the "full power and authority to require and compel the attendance of witnesses, by process of subpoena and attachment, and to do and perform all other acts and things necessary to a full and fair hearing and a determination of the case."

 Under section 1484 and the above California Supreme Court authority governing discovery in habeas corpus proceedings, we determine that the superior court has the power to order discovery when requested by a party, or in the absence of a discovery request by a party, once the order to show cause has issued and discovery jurisdiction has been conferred. On those rare occasions where no party has requested discovery and the superior court believes that discovery is necessary to ensure a full and fair hearing and a determination of the case, the court has the discretion to compel the necessary discovery. In compelling discovery on its own motion, the superior court must keep in mind its duty to "discover the truth and do justice in timely fashion." (*People v. Duvall, supra*, 9 Cal.4th at p. 482.)

### 2. *Analysis of the Superior Court's Discovery Orders*

In the present cases, the superior court included discovery orders in the orders to show cause even though no discovery request by a party was pending. We find no procedural error in the trial court's inclusion of a discovery order in the orders to show cause, because discovery jurisdiction is conferred when the order to show cause issues in a habeas corpus matter. However, because we have previously determined that the orders to show cause in which these discovery orders are incorporated must be vacated on another ground, we will also vacate the discovery orders. Therefore, we do not reach the issue of whether the superior court abused its discretion in ordering the Board to produce the decision pages for all 2003 Board parole suitability hearings.

We express no opinion as to the propriety of any future discovery orders in this matter. However, for purposes of guidance we point out that there is no discovery jurisdiction as to issues "upon which the petition fails to state a prima facie case for relief." (*People v. Gonzalez, supra,* 51 Cal.3d at p. 1261.) It follows that the discovery in a habeas corpus proceeding must be relevant to the issues upon which the petition states a prima facie case for relief and an order to show cause has issued.

■ In determining whether the factual allegations in a petition for writ of habeas corpus are sufficient to state a prima facie claim for relief, the superior court must consider existing law. (*In re Serrano, supra,* 10 Cal.4th at p. 455.) In that regard, we note that the California Supreme Court has granted review of the decision in *In re Cortinas*[*], (see *ante,* p. 1224), on which the superior court relied in compelling the Board to produce the decision pages of all 2003 Board parole suitability hearings for purposes of a statistical showing. Additionally, while these matters were pending our Supreme Court issued its decision in *In re Dannenberg, supra,* 34 Cal.4th 1061. As discussed above, in *Dannenberg* our Supreme Court clarified that the Board proceeds lawfully when it finds an inmate unsuitable for parole because the circumstances of the commitment offense indicate exceptional callousness and cruelty with trivial provocation. The Board is not required to compare the crime to other second degree murders or to the base term matrices. (*In re Dannenberg, supra,* 34 Cal.4th at p. 1098.) Our Supreme Court also ruled that an inmate serving an indeterminate sentence does not have a " 'vested right' " to have his or her sentence fixed for any period less than the maximum sentence provided by statute. (*In re Dannenberg, supra,* 34 Cal.4th at p. 1097.)

Having vacated the orders to show cause and the discovery orders for the reasons explained above, we will direct the superior court to reconsider its orders in accordance with the views expressed in this opinion.

## IV. DISPOSITION

In *People v. Superior Court (Ngo),* H027848: Let a peremptory writ of mandate issue commanding the superior court to vacate its order to show cause and the discovery order included in the order to show cause, and to reconsider its rulings in accordance with the views expressed in this opinion. The temporary stay order is vacated.

In *People v. Superior Court (Gaoiran),* H028006: Let a peremptory writ of mandate issue commanding the superior court to vacate its order to show cause and the discovery order included in the order to show cause, and to

---

[*]See Reporter's Note, page 1224.

reconsider its rulings in accordance with the views expressed in this opinion. The temporary stay order is vacated.

In *People v. Superior Court (Lewis)*, H028070: Let a peremptory writ of mandate issue commanding the superior court to vacate its order to show cause, and to reconsider its rulings in accordance with the views expressed in this opinion. The temporary stay order is vacated.

In *People v. Superior Court (Bettencourt)*, H028022: Let a peremptory writ of mandate issue commanding the superior court to vacate its order to show cause, and to reconsider its rulings in accordance with the views expressed in this opinion. The temporary stay order is vacated.

Mihara, J., and McAdams, J., concurred.