Filed 11/20/24

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| LEONARDO GARCIA, | B334806 |
| Petitioner, | (Super. Ct. No. PA070040) |
| v. | |
| THE SUPERIOR COURT OF LOS ANGELES COUNTY, | |
| Respondent; | |
| CITY OF LOS ANGELES, | |
| Real Party in Interest. | |

ORIGINAL PROCEEDING in mandate.  Superior Court of Los Angeles County, Hayden Zacky, Judge.  Petition granted.

Angela Berry, under appointment by the Court of Appeal, for Petitioner.

No appearance for Respondent.

Hydee Feldstein Soto, City Attorney, Valerie Flores, Chief Deputy, Carlos de la Guerra, Senior Assistant City Attorney,

Chung H. Cho, Supervising Deputy City Attorney, Casey T. Shim, Deputy City Attorney, for Real Party in Interest.

————————————

Leonardo Garcia filed a petition for resentencing pursuant to Penal Code former section 1170.95 (now section 1172.6) with respect to his convictions for second degree murder and attempted premeditated murder.[1]  The trial court found Garcia stated a prima facie case for relief, issued an order to show cause, and set the matter for an evidentiary hearing.  In preparation for the evidentiary hearing, Garcia's counsel issued a subpoena to the Los Angeles Police Department (LAPD) seeking the last known contact information for two witnesses, one of whom testified at trial and the other at an evidentiary hearing.  The trial court granted the LAPD's motion to quash, finding section 1172.6 did not allow for postconviction discovery.

Garcia filed a petition for writ of mandate challenging the trial court's order granting the motion to quash the subpoena. We interpret the statutory scheme under section 1172.6, similar to the analogous habeas corpus procedure, to allow the petitioner to obtain postconviction discovery after issuance of the order to show cause to enable the petitioner to defend against new (or newly emphasized) theories of liability the prosecution may rely on at the evidentiary hearing.  Further, a petitioner's right to present or respond to new or additional evidence at the evidentiary hearing under section 1172.6, subdivision (d)(3), will

_____

[1]     Further undesignated statutory references are to the Penal Code.  For ease of reference, we refer to Garcia's petition for resentencing as one filed under section 1172.6.

2

be thwarted if a petitioner is denied the ability to discover relevant evidence in advance of the hearing.

In this case, the trial court abused its discretion by preventing Garcia from obtaining contact information for two witnesses who may have information regarding the circumstances of the murder and attempted premeditated murder relevant to whether Garcia is guilty under still-valid theories of liability, including as a direct aider and abettor or under an implied malice theory.

We now grant the petition for a writ of mandate and direct the trial court to vacate its order granting the LAPD's motion to quash and to issue a new order denying the motion.

## FACTUAL AND PROCEDURAL BACKGROUND

A.    *The Murder*

The evidence at trial showed that German Chairez and Leonel Serrano were members of the Columbus Street gang. Jovani Gomez, Leonardo Garcia, Juan Carlos Andrade, and Kevin Alvarenga were members of the rival Vincent Town gang. On November 19, 2010 Chairez and Serrano were visiting a friend at an apartment complex in the North Hills section of the San Fernando Valley.  As they walked down the stairs from apartment number 279 on their way out of the complex, Serrano heard someone shout, "Fuck Columbus" and saw two men shooting at him and Chairez.  Serrano and Chairez immediately turned around and raced back up the stairs to the apartment as shots continued to be fired.  Both men were hit in the back; Chairez died from his injuries.  Serrano survived and testified he

3

did not clearly see the shooters, and therefore, he could not identify them.

Salvador Ortiz was in the area of the apartment complex on the night of the shooting and encountered Andrade, Garcia, and Gomez, known to him by their gang monikers, "Happy," "Baby," and "Clever," respectively. Ortiz had a friendly conversation with the three because Ortiz was a member of the Barrio Van Nuys gang, which was not a rival. Ortiz observed that Andrade and Gomez were armed.[2] One had a semiautomatic weapon; the other a revolver. Within a few minutes of talking to the three men, Ortiz heard a person in the alley shout that a "Columbus Streeter" was nearby. Andrade, Garcia, and Gomez took off running toward the alley. Ortiz "believe[d]" he saw Garcia pull out a gun from the middle pocket of his hooded sweatshirt, although Ortiz "couldn't really see exactly how it was." Ortiz added that he was "not sure it was a third weapon, but the indication and movement seemed like [Garcia] had a weapon." Almost immediately, Ortiz heard gunshots fired from two different guns. He did not see the actual shooting.

Chairez's girlfriend, Maria Gutierrez, testified she overheard Serrano tell a group of friends that Clever and Big Boy (Gomez and Garcia) were the shooters, and Happy and Kevin

---

[2]    In *People v. Gomez* (June 23, 2015, B251303) (nonpub. opn.), we stated that Ortiz identified Garcia and Gomez as the two men who were armed with the semiautomatic weapon and revolver. Based on our review of the trial transcript, Ortiz testified the two armed men were Andrade and Gomez. The other facts in our summary are not disputed by the parties.

4

(Andrade and Alvarenga) also "were there."[3]  Brandon Binning testified that two days before the shooting Andrade told him something "was going to go down" and "Columbus Street was going to see that Vincent Town was back."

Garcia testified in his own defense, claiming he had been at home in North Hollywood at the time of the shooting, more than 20 to 25 minutes away from the crime scene.

B.      *The Conviction, Sentencing, and Appeals*

Garcia, Gomez, Andrade, and Alvarenga were tried together.  The jury was instructed on direct aiding and abetting principles and the natural and probable consequences doctrine as a form of aiding and abetting.  All four were convicted of first degree murder (count 1), attempted premeditated murder (count 2), two counts of shooting at an inhabited dwelling (counts 3 and 4), possession of a firearm by a felon (count 6), discharging a firearm with gross negligence (count 7), and street terrorism (count 8).  The jury found true as to counts 1 through 7 that the offenses were committed for the benefit of a criminal street gang (§ 186.22, subd. (b)), Garcia personally used and intentionally discharged a firearm causing great bodily injury or death (§ 12022.53, subds. (b), (c), (d)), and a principal personally used and intentionally discharged a firearm causing great bodily injury or death (§ 12022.53, subd. (e)(1)).  Garcia admitted he had served one prior prison term within the meaning of former section 667.5, subdivision (b).  The trial court sentenced Garcia to 160 years to life.

---

[3]      An LAPD detective testified that when Gutierrez first told him about her conversation with Serrano, she identified only Gomez, Garcia, and Alvarenga, not Andrade.

On appeal, we reversed Garcia's conviction for first degree murder based on the then-recent decision in *People v. Chiu* (2014) 59 Cal.4th 155, which prohibited a conviction for first degree premeditated murder based on the natural and probable consequences theory of aiding and abetting. We also reversed Garcia's conviction for discharge of a firearm with gross negligence and vacated Garcia's sentence in its entirety, remanding the matter for resentencing. (*People v. Gomez* (June 23, 2015, B251303 [nonpub. opn.] (*Gomez*).)

On remand, as allowed under *Chiu*, the People elected to accept a reduction of the murder conviction to second degree murder, with all associated enhancements that were found true by the jury. The trial court reduced Garcia's sentence to 120 years to life. After two further appeals, at a resentencing hearing on August 3, 2017, the court again imposed a sentence of 120 years to life.

C.    *Petition for Resentencing*

On March 7, 2020 Garcia filed a petition for resentencing under section 1172.6.[4] On June 27, 2022 the trial court found that Garcia stated a prima facie case for relief, appointed counsel, issued an order to show cause, and set the matter for an evidentiary hearing.

According to Garcia's attorney, Angela Berry, in preparation for the evidentiary hearing she sought contact information for two witnesses, Binning and Nathalie Diaz.

---

[4]    This was Garcia's third petition for resentencing pursuant to section 1172.6. The first two petitions were denied because Garcia failed to state a prima facie case for relief.

6

Binning's name was mentioned in the police report, but the version of the report in the possession of Garcia's trial counsel had Binning's contact information redacted. Diaz's identity was first revealed during trial. LAPD Officer Mike Larson brought Diaz to court, and she testified at an evidentiary hearing outside the presence of the jury.[5] Diaz's contact information was never made available to defense counsel.

Berry requested contact information for Binning and Diaz from the prosecutor who handled the trial, Tannaz Mokayef. Mokayef told Berry that she did not have contact information for either witness and her copy of discovery related to Binning was also redacted. Mokayef added that Officer Larson was the "handler" for both witnesses. Garcia then served a subpoena duces tecum on Officer Larson, requesting the "[l]ast known contact information" for Binning and Diaz.

The LAPD filed a motion to quash the subpoena, arguing a defendant has no right to postconviction discovery under section 1172.6, and the right to issue a subpoena under section 1326 did not apply to a section 1172.6 resentencing proceeding because it is not a "criminal action." At the hearing on the motion, Garcia's counsel argued Garcia had the right to present additional evidence at the evidentiary hearing to address new theories of liability. Further, "to allow new evidence but to deny petitioner's ability to investigate reports and factfinding that had already been done . . . hamstrings the petitioner." She added that the subpoena did not request new information from the LAPD, but rather, contact information for the witnesses that the LAPD had at the time of trial.

---

[5] Diaz testified she overheard Alvarenga (who was friends with Diaz's boyfriend) say, "I didn't mean for him to go down."

The trial court granted the motion to quash.  In its oral ruling the court observed that under *People v. Strong* (2022) 13 Cal.5th 698 (*Strong*) and *People v. Farfan* (2021) 71 Cal.App.5th 942, a section 1172.6 petition does not allow a petitioner to attack the sufficiency of the evidence at trial or correct erroneous prior factfinding.  Rather, "the issue on a 1172.6 petition, it's very narrow.  It is whether or not, on the facts presented at the trial, a defendant could now be convicted of murder under a currently valid theory of murder. . . .  It's not a retrial."

Garcia timely filed a petition for writ of mandate challenging the trial court's order granting the motion to quash the subpoena.  Garcia sought an order staying the evidentiary hearing and compelling the LAPD to produce contact information for Binning and Diaz.[6]  After receiving supplemental briefing, we issued an order to show cause and stayed the evidentiary hearing.  The LAPD (as real party in interest) filed a return, and Garcia filed a reply.

---

[6]     In his prayer for relief Garcia requested we order the trial court to vacate its order granting the motion to quash and to direct the LAPD to produce contact information "and other identifying information (e.g., date of birth and physical characteristics)" for the two witnesses.  Because the subpoena only sought contact information for the two witnesses, we do not consider the request for identifying information, which goes beyond the original subpoena.

## DISCUSSION

A.    *Senate Bill No. 1437 and Section 1172.6*

Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Senate Bill 1437) eliminated the natural and probable consequences doctrine as a basis for finding a defendant guilty of murder and significantly limited the scope of the felony-murder rule.  (*People v. Curiel* (2023) 15 Cal.5th 433, 448-449 (*Curiel)*; *People v. Reyes* (2023) 14 Cal.5th 981, 984; *Strong, supra*, 13 Cal.5th at pp. 707-708; *People v. Lewis* (2021) 11 Cal.5th 952, 957 (*Lewis*).)  Senate Bill 1437 also provided a procedure now codified in section 1172.6 for an individual convicted of felony murder or murder under the natural and probable consequences theory to petition the sentencing court to vacate the conviction if the individual could not have been convicted of murder under Senate Bill 1437's changes to sections 188 and 189.  (*Strong*, at p. 708 & fn. 2; *Lewis,* at p. 959.)  Section 1172.6 applies to petitioners "convicted of murder, attempted murder, or manslaughter following a trial or [who] accepted a plea offer in lieu of a trial at which the petitioner could have been convicted of murder or attempted murder."  (§ 1172.6, subd. (a)(2).)

Where a petitioner makes the requisite prima facie showing the petitioner falls within the provisions of section 1172.6 and is entitled to relief, the court must issue an order to show cause and hold an evidentiary hearing to determine whether to vacate the murder, attempted murder, or manslaughter conviction and resentence the petitioner on any remaining counts.  (§ 1172.6, subds. (c) & (d)(1).)  The prosecution bears the burden of proof at the hearing to prove beyond a reasonable doubt that the

9

petitioner is guilty of murder, attempted murder, or manslaughter on a still-valid theory.  (§ 1172.6, subd. (d)(3).)

At the evidentiary hearing, the trial court "may consider evidence previously admitted at any prior hearing or trial that is admissible under current law, including witness testimony, stipulated evidence, and matters judicially noticed.  The court may also consider the procedural history of the case recited in any prior appellate opinion. . . .  The prosecutor and the petitioner may also offer new or additional evidence to meet their respective burdens."  (§ 1172.6, subd. (d)(3).)  "If the prosecution fails to sustain its burden of proof, the prior conviction, and any allegations and enhancements attached to the conviction, shall be vacated and the petitioner shall be resentenced on the remaining charges."  (*Ibid*.)  Section 1172.6, subdivision (f), makes clear the "section does not diminish or abrogate any rights or remedies otherwise available to the petitioner."

B.     *Statutory Construction and Standard of Review*

We review questions of statutory construction de novo.  (*Curiel, supra*, 15 Cal.5th at pp. 461; *Lewis, supra*, 11 Cal.5th at p. 961.)  """"As in any case involving statutory interpretation, our fundamental task here is to determine the Legislature's intent so as to effectuate the law's purpose.  [Citation.]  We begin by examining the statute's words, giving them a plain and commonsense meaning.""""  (*Lewis*, at p. 961; accord, *Curiel*, at p. 461.)  """[W]e look to 'the entire substance of the statute . . . in order to determine the scope and purpose of the provision . . . .  [Citation.]'  [Citation.]  That is, we construe the words in question "'in context, keeping in mind the nature and obvious purpose of the statute . . . ."  [Citation.]'  [Citation.]  We must harmonize 'the

10

various parts of a statutory enactment . . . by considering the particular clause or section in the context of the statutory framework as a whole.""'"" (*Lewis*, at p. 961.)

Moreover, "we must ""select the construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute, and avoid an interpretation that would lead to absurd consequences.""'"" (*City of Los Angeles v. PricewaterhouseCoopers, LLP* (2024) 17 Cal.5th 46, 64; accord, *People v. Stamps* (2020) 9 Cal.5th 685, 704 [rejecting interpretation of Senate Bill No. 1393's amendment of section 1385 that "would frustrate the Legislature's intent to have section 1385 apply uniformly, regardless of the type of enhancement at issue"].)

We review a ruling on a motion to quash for abuse of discretion. (*Facebook, Inc. v. Superior Court (Touchstone)* (2020) 10 Cal.5th 329, 359; accord, *Lunsted v. Superior Court* (2024) 100 Cal.App.5th 138, 147.) "A trial court abuses its discretion when it bases its ruling on the wrong legal standard." (*Lunsted,* at p. 147; accord, *People v. Superior Court (Humberto S.)* (2008) 43 Cal.4th 737, 746.) "'[W]hen "the propriety of a discovery order turns on . . . a question of law," we "determine the issue de novo."'" (*Jimenez v. Superior Court* (2019) 40 Cal.App.5th 824, 829.)

C.    *A Petitioner May Obtain Postconviction Discovery in a*
      *Section 1172.6 Proceeding After an Order To Show Cause*
      *Has Been Issued*

1.    *The petitioner and prosecutor may present evidence at*
      *the evidentiary hearing that was not presented at trial*

As discussed, section 1172.6, subdivision (d)(3), allows the prosecutor and the petitioner at the evidentiary hearing to "offer new or additional evidence to meet their respective burdens." The statute is silent as to what the terms "new" and "additional" mean, but a plain and commonsense meaning of the language is that both sides may introduce evidence that was not presented at trial (or admitted as part of a plea).  (See *People v. Myles* (2021) 69 Cal.App.5th 688, 698 ["the ordinary meaning of the word 'new,' unbounded by further definition or restriction in the statutory text, suggests the Legislature intended to allow both the prosecution and defendant to rely on evidence that becomes available after a trial or plea, whether the evidence previously existed or not"]; *People v. Williams* (2020) 57 Cal.App.5th 652, 661 ["the Legislature gave the superior court unfettered discretion to consider 'evidence' without any restriction at the subdivision (d)(3) hearing to determine the petitioner's eligibility for resentencing"].)

The Legislative history reflects the Legislature's intent in section 1172.6, subdivision (d)(3), to allow both the petitioner and prosecutor to rely on evidence not presented at trial.  As the Court of Appeal in *People v. Myles, supra*, 69 Cal.App.5th at page 698 explained, the first version of Senate Bill 1437, introduced on February 16, 2018, placed the burden of proof on the prosecution but did not include language that allowed the prosecutor or petitioner to present evidence outside the record of

12

conviction. The California District Attorneys Association in its opposition to the bill observed that "by placing the burden on the prosecution to prove beyond a reasonable doubt that petitioners do not qualify for resentencing, this bill will require the litigation of facts previously not litigated in the original case . . . ." (Sen. Com. on Public Safety, Analysis of Sen. Bill No. 1437 (2017-2018 Reg. Sess.) as introduced Feb. 16, 2018, p. 10.) The bill was later amended to allow the petitioner (but not the prosecutor) to present new evidence, stating "[t]he prosecutor may rely on the record of conviction to meet its burden, but the petitioner may offer new or additional evidence to meet the burden of going forward or in rebuttal of the prosecution's evidence." (Sen. Amend. to Sen. Bill No. 1437 (2017-2018 Reg. Sess.) May 25, 2018, § 6.) On August 20, 2018 the bill was amended again in the Assembly to add former section 1170.95 and provide in subdivision (d)(3) (as it does today) that "[t]he prosecutor and the petitioner may rely on the record of conviction or offer new or additional evidence to meet their respective burdens." (Assem. Amend. to Sen. Bill No. 1437 (2017-2018 Reg. Sess.) Aug 20, 2018, § 4; Stats. 2018, ch. 1015, § 4, eff. Jan. 1, 2019.)

The ability to present new or additional evidence is critical to ensuring a full and fair hearing where the prosecution must prove guilt under a still-valid theory of liability, including a theory not presented at trial. (See *People v. Schell* (2022) 84 Cal.App.5th 437, 444-445 ["'[B]ecause a section [1172.6] evidentiary hearing does not subject a defendant to the risk of additional punishment, is not a trial, permits both parties to present new evidence, and merely considers whether the defendant's request for leniency meets the necessary criteria, there is no constitutional problem in allowing new theories of

13

murder liability at that hearing.'"].)  This is precisely such a case:
At trial the prosecutor relied on the now-invalid natural and
probable consequences theory.[7]  At the evidentiary hearing,
therefore, the prosecutor will need to prove beyond a reasonable
doubt that Garcia was a direct aider and abettor or guilty under a
valid implied malice theory.[8]

The trial court was mistaken in stating as a basis for
granting the motion to quash that the evidentiary hearing was
limited to "the facts presented at trial."  While the hearing does
not "permit wholesale relitigation of findings supporting murder
convictions in the context of section 1172.6 resentencing" (*Strong,*

---

[7]     The trial court instructed the jury on the natural and
probable consequences doctrine, and the prosecutor at trial
argued in her closing, "Even if you go with your friends with guns
to scare the victim—just to scare, you know, just put up the gun
and say, look, if you don't stop x, y and z, we are going to come
back and get you, okay?  The natural and probable consequence
of wanting to scare somebody with a firearm like that could be
that someone might get shot, could be that the firearm might go
off, could be that the perpetrator might decide, you know what,
I'm going to take him out right now.  If that's the natural and
probable consequence of going armed to a location just to scare
someone, then you are guilty of what happens ultimately."  The
prosecutor added that the defendant "doesn't have to share the
intent of the perpetrator" to be guilty of murder.

[8]     Although the jury found true that Garcia personally and
intentionally discharged a firearm causing great bodily injury or
death (§ 12022.53, subd. (d)), the prosecution proceeded on a
theory that all four defendants were guilty of murder and
attempted murder as "principals" regardless of "whether they
actually pulled the trigger or whether they just aid[ed] and
abet[ted]" the murder and attempted murder.

14

*supra*, 13 Cal.5th at p. 715), the hearing does provide an opportunity for the prosecution and the petitioner to present evidence "with respect to issues not previously determined." (*People v. Farfan, supra*, 71 Cal.App.5th at p. 947; accord, *People v. Coley* (2022) 77 Cal.App.5th 539, 549 ["a section [1172.6] petition is not a means by which a defendant can relitigate issues already decided"].)

      2.     *Postconviction discovery is necessary to enable the petitioner to defend against new (or newly emphasized) theories of liability and to present new or additional evidence at the evidentiary hearing*

We agree with Garcia that a petitioner must be allowed to propound postconviction discovery to obtain and develop new or additional evidence to present at the evidentiary hearing. Although the statute does not address whether postconviction discovery is allowed, we consider this silence in the context of section 1172.6's other provisions and legislative intent. (See *Californians for Disability Rights v. Mervyn's, LLC* (2006) 39 Cal.4th 223, 230 ["we will employ the ordinary presumptions and rules of statutory construction commonly used to decide such matters when a statute is silent"]; *People v. Bear* (2018) 25 Cal.App.5th 490, 498 [applying rules of statutory construction to allow filing of amended petition under section 1170.18 where the statute "does not expressly state whether a second or amended petition is permitted where the first fails to satisfy the statutory criteria"].)

15

Nothing in section 1172.6 or its legislative history shows the Legislature's intent to bar postconviction discovery.[9] Moreover, to read section 1172.6 to prohibit postconviction discovery, as argued by the LAPD, would lead to the incongruous result that the statute expressly confers the right to introduce new or additional evidence at the evidentiary hearing, yet a petitioner would not have the ability to gather the necessary evidence to defend against new theories presented by the prosecutor at the evidentiary hearing.[10] Denial of postconviction discovery would therefore be inconsistent with the statute's purpose of ensuring petitioners are found guilty of crimes commensurate with their culpability. (See Stats. 2018, ch. 1015, § 1, subd. (e) ["[r]eform [was] needed in California to limit

---

[9] The legislative history does not address whether a petitioner or the prosecutor may obtain postconviction discovery once an order to show cause is issued.

[10] The Supreme Court in *Needham v. Superior Court* (2024) 16 Cal.5th 333, 364, addressed a similar absence of statutory authority in deciding whether under the Sexually Violent Predator Act (Welf. & Inst. Code, § 6600 et seq.) the People could present expert testimony at trial if they disagreed with the opinion of the Department of Mental Health's evaluator that a defendant was no longer a sexually violent predator. The court held the People could present expert testimony, explaining, "Nothing in the Act suggests a legislative intent to allow the People to continue with a commitment proceeding notwithstanding evaluators' changed opinions but simultaneously to hamstring them by not allowing them to present expert testimony to counter the new opinions and bolster its contrary view of the case." (*Needham*, at p. 364.)

16

convictions and subsequent sentencing so that the law of California fairly addresses the culpability of the individual"].)

The principles guiding discovery in habeas corpus proceedings support our conclusion that a petitioner may obtain postconviction discovery under section 1172.6 to address the prosecution's theory of liability at the evidentiary hearing. (See *Lewis, supra,* 11 Cal.5th at p. 971 [analogizing section 1172.6 proceedings to habeas corpus proceedings].) Similar to a habeas corpus proceeding, the issuance of an order to show cause in a section 1172.6 proceeding means the petitioner has stated a prima facie case for relief and ""would be entitled to relief if his or her factual allegations were proved. . . ."" (*Lewis,* at p. 971; see *People v. Romero* (1994) 8 Cal.4th 728, 737 ["a court must first determine whether the [habeas] petition states a prima facie case for relief—that is, whether it states facts that, if true, entitle the petitioner to relief"].)

The Supreme Court has explained that in a habeas corpus proceeding, "discovery is available once [the court has] issued an order to show cause." (*In re Scott* (2003) 29 Cal.4th 783, 813-814; accord, *People v. Gonzalez* (1990) 51 Cal.3d 1179, 1289 ["Once an order to show cause issues, the issuing court should have discretion to grant discovery."]; *Jimenez v. Superior Court, supra,* 40 Cal.App.5th at p. 830 ["once an order to show cause has issued, courts have discretion to order discovery as to issues on which the petition has stated a prima facie case"].) "The precise nature and scope of discovery following an order to show cause 'has generally been resolved on a case-by-case basis,'" and the court is "tasked . . . with 'fashion[ing] a fair discovery rule.'" (*Jimenez,* at p. 831; see *In re Scott,* at p. 813 [affirming referee's order that the habeas petitioner produce discovery to the

17

prosecution, approving reference to section 1054.3 pretrial discovery as a "shorthand way" to describe the postconviction discovery although section 1054.3 does not apply to habeas corpus proceedings].)

The recent decision in *People v. Nuno* (2024) 105 Cal.App. 5th 1030 is on point. The Court of Appeal in *Nuno* concluded that a petitioner in a section 1172.6 proceeding may obtain "material exculpatory evidence" in a peace office's personnel file upon a sufficient motion filed under *Brady v. Maryland* (1963) 373 U.S. 83 and *Pitchess v. Superior Court* (1974) 11 Cal.3d 531 in advance of an evidentiary hearing. (*Nuno,* at pp. 1061-1062.) The court analogized to a habeas corpus proceeding and observed that, although there is no statute "expressly authorizing discovery" in a habeas corpus proceeding, discovery is available to the petitioner "'once [a court] ha[s] issued an order to show cause.'" (*Nuno*, at p. 1060.) Similarly, although section 1172.6 lacks express statutory authority for discovery, a petitioner may seek *Brady* and *Pitchess* discovery after an order to show cause has issued in preparation for the evidentiary hearing. (*Nuno*, at pp. 1061-1062.)

Moreover, an order to show cause under section 1172.6 creates a "cause," the resolution of which statutorily requires the trial court to hold an evidentiary hearing (unless the prosecution concedes), at which new or additional evidence may be presented. (§ 1172.6, subd. (d)(1), (3); cf. *In re Serrano* (1995) 10 Cal.4th 447, 455 [in a habeas corpus proceeding "the issuance of the order to show cause creates a 'cause' giving the People a right to reply to the petition by a return and to otherwise participate in the court's decisionmaking process"].) By creating a "cause," jurisdiction is conferred on the trial court to decide the petition

18

on the merits, thereby giving the court "all the means necessary to carry it into effect . . . ."  (Code Civ. Proc., § 187 ["When jurisdiction is, by the Constitution or this Code, or by any other statute, conferred on a Court or judicial officer, all the means necessary to carry it into effect are also given; and in the exercise of this jurisdiction, if the course of proceeding be not specifically pointed out by this Code or the statute, any suitable process or mode of proceeding may be adopted which may appear most conformable to the spirit of this Code."]; see generally *People v. Superior Court (Morales)* (2017) 2 Cal.5th 523, 534 [although section 1054.9 is silent as to preservation of evidence, "because the superior court has jurisdiction . . . to grant postconviction discovery to the extent consistent with the statute, the court has the inherent power under Code of Civil Procedure section 187 to order preservation of evidence that would potentially be subject to such discovery"]; cf. *Board of Prison Terms v. Superior Court* (2005) 130 Cal.App.4th 1212, 1241-1242 ["no discovery is permitted prior to the issuance of the order to show cause, because a habeas corpus petition that does not state a prima facie claim for relief 'creates no cause or proceeding which would confer discovery jurisdiction'"].)  Allowing postconviction discovery in a section 1172.6 proceeding is necessary for the trial court to carry out the statutory mandate that the parties at the evidentiary hearing be allowed to present new or additional evidence.

The Attorney General contends Code of Civil Procedure section 187 does not support postconviction discovery, relying on *People v. Gonzalez, supra*, 51 Cal.3d at pages 1257 to 1258.  In *Gonzalez*, however, the Supreme Court considered whether there was a postconviction right to discovery prior to the filing of a

19

petition for a writ of habeas corpus and issuance of an order to show cause where the defendant argued he needed discovery to develop a collateral attack on a then-final judgment.[11]  (*Id*. at p. 1256.)  The Supreme Court granted the People's petition for a writ of mandate to overturn the trial court's discovery order, explaining that "section 187 operates only where some other provision of law confers judicial authority *in the first instance*." (*Id*. at p. 1257.)  The court reasoned "the bare filing of a claim for postconviction relief cannot trigger a right to unlimited discovery. A habeas corpus petition must be verified, and must state a 'prima facie case' for relief.  That is, it must set forth specific facts which, if true, would require issuance of the writ.  Any petition that does not meet these standards must be summarily denied, and it creates no cause or proceeding which would confer discovery jurisdiction." (*Id*. at p. 1258.)  In contrast to *Gonzalez*, the trial court here issued an order to show cause, creating precisely such a "cause of proceeding which would confer discovery jurisdiction." (*Ibid*.)

In light of the Legislature's intent in enacting section 1172.6, the availability of postconviction discovery in analogous habeas corpus proceedings, and the trial court's authority under Code of Civil Procedure section 187 to adopt procedures necessary to carry out its statutory mandate under section 1172.6, we conclude a trial court has jurisdiction to order postconviction discovery once an order to show cause is issued. Where a petitioner was previously convicted of murder,

---

[11]     *People v. Gonzalez, supra*, 51 Cal.3d 1179 has been partially abrogated by the enactment of section 1054.9, which creates a right for certain defendants to obtain limited discovery prior to filing a habeas petition or motion to vacate a judgment.

attempted murder, or manslaughter under a now-invalid theory and seeks discovery related to liability under a different theory or to present or respond to new or additional evidence, the petitioner has a right to relevant discovery to prepare for the evidentiary hearing. We recognize, as in the habeas context, the nature and scope of the discovery will be case-specific, and it is best left to the discretion of the trial court.

In this case, the trial court abused its discretion in granting the motion to quash. As an initial matter, the court granted the motion based on an incorrect reading of the statute to limit evidence at the evidentiary hearing to the evidence presented at trial. Further, by preventing Garcia from obtaining contact information for two witnesses to the underlying events, the court hindered Garcia's ability to defend against potential valid theories of liability at the evidentiary hearing. Binning and Diaz may have information about Garcia's conduct and intent prior to and during the shooting, which would be relevant to whether Garcia could now be convicted of murder as a direct aider and abettor or under an implied malice theory.

As the Supreme Court explained in *People v. Reyes, supra*, 14 Cal.5th at page 991, "'to be liable for an implied malice murder, the direct aider and abettor must, by words or conduct, aid the commission of the life-endangering *act*, not the result of that act. The mens rea, which must be personally harbored by the direct aider and abettor, is knowledge that the perpetrator intended to commit *the act*, intent to aid the perpetrator in the commission of *the act*, knowledge that *the act* is dangerous to

21

human life, and acting in conscious disregard for human life.'" (Accord, *Curiel, supra*, 15 Cal.5th at p. 463.)[12]

> 3.      *Neither Proposition 115 nor section 1326 prohibits postconviction discovery in section 1172.6 proceedings*

In 1990 Proposition 115 added section 1054 et seq. to the Penal Code, authorizing reciprocal discovery in "criminal cases." (*People v. Superior Court (Pearson)* (2010) 48 Cal.4th 564, 567 (*Pearson*); *Izazaga v. Superior Court* (1991) 54 Cal.3d 356, 363.)

---

[12]      Garcia did not in his petition for a writ of mandate seek postconviction discovery pursuant to section 1054.9, although in his reply he suggested that a motion to vacate under section 1054.9 contemplates a petition under section 1172.6. The LAPD, in turn, contends section 1054.9 only applies to habeas corpus proceedings. Because Garcia did not rely on section 1054.9, subdivision (a), in the trial court or in his petition for writ of mandate to support his right to postconviction discovery, we do not decide this question. We observe, however, that under section 1054.9, subdivision (a), postconviction discovery is available to any defendant convicted of a serious or violent felony resulting in a sentence of 15 years or more who is pursuing a "writ of habeas corpus or *a motion to vacate a judgment*." (§ 1054.9, italics added.) A successful section 1172.6 petition would result in a defendant's conviction being vacated. (See § 1172.6, subd. (d)(3) ["If the prosecution fails to sustain its burden of proof, the prior conviction . . . shall be vacated."].) In addition, section 1172.6, subdivision (f), makes clear the "section does not diminish or abrogate any rights or remedies otherwise available to the petitioner," which would include any discovery rights under section 1054.9. Section 1054.9 may not, however, assist a defendant convicted of attempted murder (a life term) or voluntary manslaughter (a maximum term of 11 years), unless the aggregate term is 15 or more years.

Proposition 115 made clear, however, in section 1054.5, subdivision (a), that "[n]o order requiring discovery shall be made in criminal cases except as provided in this chapter" and "[t]his chapter shall be the only means by which the defendant may compel the disclosure or production of information from prosecuting attorneys [and] law enforcement agencies which investigated or prepared the case against the defendant." (See *Pearson*, at pp. 569-570.) The LAPD contends that because a postconviction section 1172.6 proceeding is not a "criminal case," Proposition 115 bars any discovery not provided by the discovery chapter (starting with section 1054). The LAPD's reliance on Proposition 115 is misplaced.

The Supreme Court in *Pearson, supra*, 48 Cal.4th at page 570 rejected the contention that Proposition 115 bars postconviction discovery. In that case, the Supreme Court considered a challenge to section 1054.9 on the basis it amended Proposition 115 without a two-thirds majority vote in the Legislature. (*Pearson*, at p. 567.) The court held section 1054.9 did "not amend Proposition 115 because that proposition governs only pretrial discovery and does not prohibit postconviction discovery of the kind that section 1054.9 provides." (*Pearson*, at p. 567.)

The Supreme Court explained, "Thus, the narrow question is whether discovery to prosecute (or prepare) a habeas corpus matter comes within a 'criminal case[ ]' under section 1054.5. We do not believe so. A habeas corpus matter has long been considered a separate matter from the criminal case itself." (*Pearson, supra*, 48 Cal.4th at pp. 571-572.) The court concluded, "Because of the differences between the underlying criminal case and a habeas corpus matter challenging that underlying case, we

23

do not believe the electorate that passed Proposition 115, in providing for pretrial discovery in a criminal case, intended either to provide for or to prohibit discovery in a separate habeas corpus matter." (*Pearson,* at pp. 572-573; see *In re Scott, supra*, 29 Cal.4th at p. 813 ["Petitioner is correct that . . . section 1054.3 [allowing prosecutorial discovery] does not apply to habeas corpus proceedings.  It applies instead to the underlying criminal proceeding."].)

A section 1172.6 proceeding, similar to a habeas corpus proceeding, provides an alternative avenue for "collateral relief from a judgment of conviction." (*Lewis, supra*, 11 Cal.5th at p. 972.)  And, like a habeas corpus petition, a section 1172.6 petition initiates a "separate matter from the criminal case itself." (See *Pearson, supra*, 48 Cal.4th at pp. 571-572.)  Thus, Proposition 115's limitations on pretrial discovery in a criminal case do not apply to preclude discovery in a section 1172.6 postconviction proceeding.

The LAPD also contends section 1326 does not authorize issuance of a subpoena duces tecum after sentencing. Section 1326, subdivision (a), sets forth the procedure by which a subpoena may be signed and issued to compel "the attendance of a witness before a court or magistrate."  Subdivision (b), in turn, specifies the procedure for issuance of a "subpoena issued in a criminal action," including compliance with Evidence Code section 1560,[13] where the subpoena seeks the production of

---

[13]    Evidence Code section 1560 provides the procedure for production of business records pursuant to a subpoena duces tecum.

24

documents or records. We agree with the LAPD that subdivision (b) of section 1326 on its face does not apply to a subpoena issued in a section 1172.6 proceeding because it only applies to discovery through the sentencing hearing. (See § 683 [a "[c]riminal action" is "[t]he proceeding by which a party charged with a public offense is accused and brought to trial and punishment"].) However, the fact section 1326, subdivision (b), does not apply to a postconviction proceeding seeking to vacate a judgment does not mean a petitioner in a section 1172.6 proceeding may not issue a subpoena in compliance with section 1326, subdivision (a) (specifying who may sign and issue the subpoena) and the requirements in Evidence Code section 1560, subdivisions (b) (for service of a subpoena duces tecum on the custodian of records or other qualified witness) and (c)(1) (specifying the procedure for responding to a subpoena duces tecum that directs attendance in court).[14] (Cf. *Lunsted v. Superior Court, supra*, 100 Cal.App.5th at p. 147 [applying section 1326 in the context of a resentencing hearing under

---

[14] Evidence Code section 1560, subdivision (b)(1), specifies procedure that applies to "any criminal action." In contrast to Penal Code section 683, Evidence Code section 130 defines "'[c]riminal action'" to include "criminal proceedings." A section 1172.6 petition for resentencing is a criminal proceeding. (*People v. Nuno, supra*, 105 Cal.App.5th at p. 1052 ["'A section 1172.6 petition for resentencing is a continuation of the petitioner's underlying criminal proceeding'"]; *People v. Rodriguez* (2024) 103 Cal.App.5th 451, 457 [same]; see *People v. Silverbrand* (1990) 220 Cal.App.3d 1621, 1628 ["although all criminal actions include criminal proceedings, not all criminal proceedings are necessarily criminal actions"].)

section 1172.75 on the basis it is a "sentencing hearing" and therefore a "'criminal action'"].)[15]

## DISPOSITION

The petition for writ of mandate is granted.  Let a writ of mandate issue directing the trial court to vacate its December 5, 2023 order granting the LAPD's motion to quash and to enter a new order denying the motion to quash.  The stay of the March 28, 2024 evidentiary hearing issued by this court on March 27, 2024 is lifted.

FEUER, J.

We concur:

MARTINEZ, P. J.

SEGAL, J.

---

[15]     Moreover, as discussed, under Code of Civil Procedure section 187, once the trial court is vested with jurisdiction over the Penal Code section 1172.6 proceeding, it has all the means to effectuate its jurisdiction, which would include allowing issuance of a subpoena duces tecum (or issuing the subpoena).

26