Filed 3/28/25

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| ROBERT ARTHUR MCINTOSH,<br><br>        Petitioner,<br><br>        v.<br><br>THE SUPERIOR COURT OF<br>SAN DIEGO COUNTY<br><br>        Respondent;<br><br>THE PEOPLE,<br><br>        Real Party in Interest. | D084379<br><br>(San Diego County Super. Ct.<br>Nos. SCN199464, HCN1077) |

ORIGNAL PROCEEDING on petition for writ of habeas corpus. Petition for writ of habeas corpus construed as a petition for writ of mandate. Petition granted in part.

Robert Arthur McIntosh, in pro. per.; and John L. Staley, under appointment by the Court of Appeal, for Petitioner.

No appearance for Respondent.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Steve

Oetting and Kristen Ramirez, Deputy Attorneys General, for Real Party in Interest.

## INTRODUCTION

Robert Arthur McIntosh sought appointment of counsel to help him prosecute a petition for writ of habeas corpus in superior court in a non-capital case.[1]  The petition raised claims pursuant to Penal Code[2] section 745, subdivision (a), of the California Racial Justice Act (RJA).  (Stats. 2020, ch. 317.)  The trial court denied McIntosh's request for counsel on the ground he had not met the prima facie showing that is required for issuance of an order to show cause (OSC).

The appointment of counsel in RJA habeas proceedings is governed by section 1473, subdivision (e) (section 1473(e)).  We hold the plain language of section 1473(e) imposes a duty on trial courts to consider whether indigent petitioners who request counsel, like McIntosh, are entitled to appointed counsel based on an assessment of the adequacy of the factual allegations in the habeas petition, not an assessment of the overall sufficiency of the prima facie showing that must be met to obtain an OSC.  This is a distinction with a difference.

The trial court here accordingly had a duty to assess McIntosh's request for counsel that was distinct and independent of its duty to assess whether to issue an OSC.  The court failed to undertake this mandatory duty when it conflated the two inquiries.  As a remedy, we exercise our discretion to construe McIntosh's petition for writ of habeas corpus as a petition for writ

---

[1]    Our opinion does not apply to the appointment of counsel in capital cases.  (See Gov. Code, § 68662, subd. (a).)

[2]    Undesignated statutory references are to the Penal Code.

of mandate, and we issue a writ of mandate directing the trial court to conduct the required inquiry.

## BACKGROUND

McIntosh, who is Black, contends he was disparately charged and sentenced due to his race, ethnicity or national origin in violation of section 745, subdivision (a), of the RJA. He contends the San Diego District Attorney's Office charged gang enhancements (§ 186.22, subd. (b)) and enhancements for personal use of a firearm (§ 12022.53, subd. (d)) more frequently against similarly situated people who share his race than others in violation of section 745, subdivision (a)(3). He contends the sentences imposed were also longer and more severe for those who are similarly situated and share his race in violation of section 745, subdivision (a)(4).

In support of these contentions, McIntosh alleges Blacks "constitute 6.5 [percent] of the [s]tate [p]opulation but 29.7 [percent] of the prison population [and] 21.7 [percent] of . . . felony arrests. Going deeper into the system, they constitute 78 [percent] of the felony enhancement prison population. On the other hand, [W]hites constitute 47.1 [percent] of the [s]tate population[,] but only 35.7 [percent] of felony arrest[s] and 28.7 [percent] of the prison population," and they constitute "58.4 [percent] of the felony enhancement" prison population. The petition he filed in this court attaches four reports and one news article that discuss statistical data that allegedly demonstrate these disparities, including data specific to San Diego County.

It is undisputed McIntosh is indigent and cannot afford counsel. He filed a petition for writ of habeas corpus in superior court asserting his RJA claims and seeking appointment of counsel to assist him.

The trial court denied McIntosh's petition and did not appoint counsel. It did so on the ground he failed to make the prima facie showing that is

3

required for an OSC to issue. The court ruled section 1473(e) "requires that a court appoint counsel and hold a hearing only if a petitioner has made a prima facie showing of a violation," and found his claims were "unsupported as required by statute."

McIntosh then petitioned this court for a writ of habeas corpus. We issued an OSC limited to the narrow question of whether he was entitled to the appointment of counsel pursuant to section 1473(e): "For good cause shown, [the People are] ordered to show cause why petitioner is not entitled to appointment of counsel in his proceedings under the Racial Justice Act, Penal Code section 745. The parties' responses to the order to show cause should be limited to the following issue: Why is petitioner not entitled to appointment of counsel pursuant to Penal Code section 1473, subdivision (e), in light of the allegations he has pled and the data he has provided potentially demonstrating racial disparities in charging on the firearm and gang enhancements and sentencing on the firearm enhancement in San Diego County?"[3]

## DISCUSSION

In response to our OSC, McIntosh and the Attorney General both contend section 1473(e) sets forth a one-step inquiry under a single standard to determine whether an RJA habeas petitioner is entitled to both (1) the appointment of counsel, and (2) issuance of an OSC. The Attorney General contends the required showing is identical to the prima facie showing that has long governed when an OSC will issue in non-RJA habeas proceedings. (See *People v. Duvall* (1995) 9 Cal.4th 464, 474–475 (*Duvall*).) McIntosh, by contrast, agrees with the trial court that the required prima facie showing is

---

[3] We directed Appellate Defenders, Inc. to appoint counsel to respond to our order on McIntosh's behalf in these appellate proceedings only.

the "somewhat different" standard that now applies to RJA motions. (See *Finley v. Superior Court* (2023) 95 Cal.App.5th 12, 22; § 745, subd. (h)(2).) We do not resolve the parties' dispute on this point, because we disagree with both of them that McIntosh was required to make a prima facie showing in order to have counsel appointed. As we explain, the process takes place in two steps and the required inquiries are not identical. Our review is de novo. (*People v. Lewis* (2021) 11 Cal.5th 952, 961 ["The proper interpretation of a statute is a question of law we review de novo."].)

## I.

### *The Right to Court-Appointed Counsel in Non-RJA Habeas Proceedings*

As important background, we begin our discussion with a summary of the procedures that were in place before the enactment of the RJA for obtaining an OSC in non-RJA habeas proceedings. These procedures are significant because it has long been the rule that the right to counsel in non-RJA habeas proceedings is "triggered" only when a "petition attacking the validity of a judgment states a prima facie case leading to issuance of an [OSC]." (*People v. Frazier* (2020) 55 Cal.App.5th 858, 866; *In re Clark* (1993) 5 Cal.4th 750, 780 [general rule applied in habeas proceedings]; see *People v. Shipman* (1965) 62 Cal.2d 226, 232 [general rule].)

The process begins with the petitioner asserting claims in a verified petition. (*People v. Romero* (1994) 8 Cal.4th 728, 737 (*Romero*).) The petition is required to "state fully and with particularity the facts on which relief is sought." (*Duvall, supra*, 9 Cal.4th at p. 474.) " 'Conclusory allegations made without any explanation of the basis for the allegations' " are inadequate to establish this initial burden. (*Ibid.*) The petition must also address and explain potential procedural bars to relief. (See generally, *In re Reno* (2012) 55 Cal.4th 428 (*Reno*).) And it must "include copies of reasonably available

5

documentary evidence supporting the claim, including pertinent portions of trial transcripts and affidavits or declarations." (*Duvall*, at p. 474.)

Next, "[w]hen presented with a petition for a writ of habeas corpus, a court . . . determine[s] whether the petition states a prima facie case for relief—that is, whether it states facts that, if true, entitle the petitioner to relief—and also whether the stated claims are for any reason procedurally barred." (*Romero*, *supra*, 8 Cal.4th at p. 737.) In this context—i.e., assessing a verified pleading supported by documentary evidence—"[a] 'prima facie' showing refers to those facts which will sustain a favorable decision if the evidence submitted in support of the allegations by the petitioner is credited." (*In re Edward H.* (1996) 43 Cal.App.4th 584, 593.)

Significantly, at this stage of the proceedings, courts do not make credibility determinations unless the court's own records contradict the undisputed facts alleged in the petition. (*In re Serrano* (1995) 10 Cal.4th 447, 456.) However, "[t]o assist the court in determining the petition's sufficiency, the court may request an informal response from the petitioner's custodian or the real party in interest." (*Romero*, *supra*, 8 Cal.4th at p. 737.) "Through the informal response, the custodian or real party in interest may demonstrate, by citation of legal authority and by submission of factual materials, that the claims asserted in the habeas corpus petition lack merit and that the court therefore may reject them summarily, without requiring formal pleadings (the return and traverse) or conducting an evidentiary hearing." (*Id.* at p. 742.) "If the petitioner successfully controverts the factual materials submitted with the informal response, or if for any other reason the informal response does not persuade the court that the petition's

6

claims are lacking in merit, then the court must proceed to the next stage by issuing an [OSC] or the now rarely used writ of habeas corpus."[4] (*Ibid*.)

Finally, issuance of an OSC triggers an indigent petitioner's right to the appointment of counsel. (Cal. Rules of Court, rule 4.551(d)(1).)

II.

*The Right to Court-Appointed Counsel in RJA Habeas Proceedings*

With this legal landscape in place, the Legislature, in 2020, enacted the RJA. (Stats. 2020, ch. 317, § 1.) The purpose of the RJA is to "purge racial discrimination from our criminal justice system." (*Young v. Superior Court* (2022) 79 Cal.App.5th 138, 150.) To that end, "[t]he RJA . . . amended section 1473, which identifies bases for prosecuting a petition for writ of habeas corpus, to add a subdivision governing the litigation of RJA claims." (*People v. Wilson* (2024) 16 Cal.5th 874, 945 (*Wilson*).) Among other topics, subdivision (e) of section 1473 addresses the showings that are required in RJA habeas proceedings (1) to have counsel appointed at public expense, and (2) to be entitled to issuance of an OSC. (*Wilson*, at p. 945; Assem. Bill No. 256 (2021–2022 Reg. Sess.); Stats. 2022, ch. 739, §§ 2, 3.)

As noted, the Attorney General contends the inquiries that take place under section 1473(e) to determine whether to appoint counsel and whether to issue an OSC are one and the same. He claims the single standard that applies is identical to the prima facie showing that has long governed when an OSC will issue to commence the formal pleadings phase of habeas proceedings in non-capital cases. In his view, petitioners are entitled to counsel "only after" they establish a "a prima face case for relief . . .

---

[4] Courts have "adopted the practice of issuing an [OSC] in place of the writ of habeas corpus when a habeas corpus petition states a prima facie case for relief." (*Romero*, *supra*, 8 Cal.4th at p. 738.)

7

consistent with general habeas procedures," and "McIntosh's request for counsel is premature since he is not entitled to counsel before the issuance of an [OSC]."

McIntosh also contends RJA habeas petitioners must make a prima facie showing sufficient to be entitled to an OSC in order to have counsel appointed. But unlike the Attorney General, he contends the definition of "prima facie showing" is found in section 745, subdivision (h)(2) of the RJA. That provision provides, a " '[p]rima facie showing' means that the defendant produces facts that, if true, establish that there is a substantial likelihood that a violation of subdivision (a) occurred. For purposes of this section, a 'substantial likelihood' requires more than a mere possibility, but less than a standard of more likely than not." (§ 745, subd. (h)(2).)

We disagree with both parties.

In any case of statutory interpretation, our task is to determine the intent of the Legislature. (*People v. Superior Court (Zamudio)* (2000) 23 Cal.4th 183, 192.) To determine Legislative intent, "we look first to the words the Legislature used, giving them their usual and ordinary meaning." (*Ibid*.) If the language is plain and unambiguous, the plain meaning of the language is controlling. (*Ibid*.) There is also "no need for construction, nor is it necessary to resort to indicia of the intent of the Legislature (in the case of a statute) or of the voters (in the case of a provision adopted by the voters)." (*Lungren v. Deukmejian* (1988) 45 Cal.3d 727, 735.)

Here, based on the plain language in section 1473(e), two separate and distinct inquiries take place during the informal pleading stage of habeas proceedings when an indigent petitioner asserts an RJA claim and asks the court to appoint counsel. Although both inquiries require an assessment of the sufficiency of the pleadings, the court's review of the sufficiency of the

pleadings before deciding whether to appoint counsel is not identical to its review before deciding whether to issue an OSC. (Cf. *People v. Patton* (March 3, 2025, S279670) ___ Cal.5th ___, ___ [2025 WL 666005, at *5] (*Patton*) [addressing a similar two-step process that is required for the appointment of counsel and issuance of an OSC pursuant to § 1172.6].)

First, for counsel to be appointed, section 1473(e) requires courts to determine whether "*the petition alleges facts that would establish a violation of [the RJA].*" (Italics added.) Second, for an OSC to issue, section 1473(e) requires courts to determine whether "*the petitioner has made a prima facie showing of entitlement to relief.*" (Italics added.) With clear language, section 1473(e) limits the inquiry before the appointment of counsel to an assessment of the facial sufficiency of the factual allegations *in the petition*, and to consideration of whether they adequately allege a *violation* of the RJA. By contrast, the inquiry before issuance of an OSC is manifestly broader than mere review of the adequacy of the factual allegations that appear in the petition. This is true no matter which definition of "prima facie showing" applies.

If we assume the Attorney General is correct and the prima facie showing that is "consistent with general habeas procedures" applies to RJA claims, the inquiry to obtain an OSC is broader than the inquiry to obtain appointment of counsel for two reasons. First, the inquiry is broader in the sense that to allege "entitlement to relief" pursuant to the RJA, as opposed to a mere "violation" of the RJA, petitioners must address and explain potential procedural bars and, when necessary, adequately allege prejudicial error. (§§ 1473(e), 745, subd. (k); *Reno, supra,* 55 Cal.4th at pp. 452–454.) Second, the prima facie showing inquiry to obtain an OSC extends beyond the four corners of the habeas petition. It includes consideration of the petition

9

exhibits, relevant documents in the superior court file, and, when requested by the court, an informal response and reply.  (*Romero*, *supra*, 8 Cal.4th at pp. 737–742.)

Our conclusion is the same if we assume McIntosh is correct that the definition of prima facie showing in section 745, subdivision (h)(2), applies to RJA habeas proceedings.  This is because section 745, subdivision (h)(2), places an evidentiary burden on litigants with RJA claims that they must satisfy in order to obtain an OSC.  (See generally, *Patton*, *supra*, ___ Cal.5th at p. __, fn. 9 [2025 WL 666005, fn. 9] [explaining the difference between prima facie inquiries that impose an evidentiary burden and those that do not].)  The provision defines " '[p]rima facie showing' " to "mean[ ] that the defendant *produces facts* that, if true, establish that there is a substantial likelihood that a violation of [the RJA] occurred."  (§ 745, subd. (h)(2), italics added.)  By contrast, to be entitled to counsel in RJA habeas proceedings, petitioners are required only to "*allege*[ ] *facts* that would establish a violation of [the RJA]."  (§ 1473(e), italics added.)

Section 1473(e) thus provides for two separate inquiries during the informal pleadings stage of habeas proceedings that raise RJA claims—one to determine whether to appoint counsel and one to determine whether to issue an OSC.  The plain language of section 1473(e) compels this conclusion.

In support of his single-inquiry position, the Attorney General points to section 1473, subdivision (c), which provides, "This section does not change the existing procedures for habeas relief."  He argues this provision means subdivision (e) must be interpreted in a way that is identical to the existing procedures applicable to non-RJA habeas proceedings, including the requirement that an OSC issue before indigent litigants are entitled to counsel.  We are not persuaded.

10

If the Legislature meant for the appointment process in RJA habeas proceedings and non-RJA habeas proceedings to be exactly the same, there was no need for it to address those procedures in subdivision (e) of section 1473 in the first place. Subdivision (c) of section 1473, moreover, is easily harmonized with subdivision (e) by interpreting it to mean that the habeas procedures set forth in subdivision (e) apply to RJA claims only, and the habeas procedures already in place for non-RJA claims remain the same. (See *People v. Valencia* (2017) 3 Cal.5th 347, 357–358 [" 'statutes or statutory sections relating to the same subject must be harmonized, both internally and with each other, to the extent possible.' "].) To conclude otherwise, would require us to read the words in subdivision (e) to mean something they do not say.

For all these reasons, we conclude the statutory language in section 1473(e) makes it clear that RJA habeas petitioners are entitled to the appointment of counsel based on an assessment of whether the habeas petition alleges facts that would establish a violation of the RJA. The trial court therefore erred when it denied counsel on the ground that McIntosh failed to meet the prima facie showing that is required to obtain an OSC.

### III.

### *Return to Superior Court*

As a remedy, we exercise our discretion to construe McIntosh's petition for writ of habeas corpus as a petition for writ of mandate, and we issue a writ of mandate directing the trial court to conduct the required inquiry. (*Gray v. Superior Court* (2005) 125 Cal.App.4th 629, 636, fn. 3.) Ordinarily, mandate does not lie to correct judicial errors by the superior court in habeas proceedings. (*In re Stier* (2007) 152 Cal.App.4th 63, 83–84.) Here, however, the trial court failed to perform its required duty to conduct an independent

11

assessment of whether McIntosh was entitled to have counsel appointed under newly adopted procedures enacted by the Legislature. (See, e.g., *Alfredo A. v. Superior Court* (1994) 6 Cal.4th 1212, 1217 [failure to conduct required bail hearing within 48 hours of arrest]; *Rose v. Superior Court* (2000) 81 Cal.App.4th 564, 566, 568–569, 576 [failure to conduct required evidentiary hearing and issue a reasoned decision].) " 'The law is well settled that a trial court is under a duty to hear and determine the merits of all matters properly before it which are within its jurisdiction and that mandate may be used to compel the performance of this duty.' " (*Burnett v. Superior Court* (1974) 12 Cal.3d 865, 869.)

Because of the unique procedural posture of these proceedings, we do not have the habeas petition McIntosh filed in superior court before us. We therefore express no opinion as to whether the allegations in that petition satisfy the requirements for having counsel appointed to represent him. However, we observe that the trial court's ruling implies it believed the petition could potentially be amended and/or further supported so as to meet the standards for appointment of counsel and issuance of an OSC. The ruling provides that McIntosh "is not entitled to appointment of counsel or a hearing *at this time* because he has failed to make a prima facie showing of [an RJA] violation." (Italics added.) Yet, the stated disposition is an unqualified denial of the petition with no opportunity to correct its perceived shortcomings.

For guidance on return, we note that a petitioner's allegations in habeas proceedings are assessed in two stages. The purpose of the *informal* first stage—where we find ourselves here, and where the court decides whether to appoint counsel when RJA claims are raised—is to allow for the "identification of facially deficient petitions," ones that are so clearly lacking

12

in merit the court is justified in "reject[ing] them summarily, without requiring formal pleadings." (*In re Jenkins* (2023) 14 Cal.5th 493, 521; *id.* at p. 519.)  The informal response and reply, if requested, serve to assist the court in this "screening function." (*Romero, supra,* 8 Cal.4th at p. 742.)  If and after an OSC issues, the issues potentially in dispute are later assessed more rigorously through formal pleadings and "different rules apply." (*Jenkins,* at p. 522.)

During this initial, informal stage, the policy of "[l]iberality in permitting amendment is the rule" as it is in civil cases.  (See *Angie M. v. Superior Court* (1995) 37 Cal.App.4th 1217, 1227.)  "The goal . . . of the procedures that govern habeas corpus is to provide a framework in which a court can discover the truth and do justice in timely fashion." (*Duvall*, *supra*, 9 Cal.4th at p. 482.)  Accordingly, "the superior court has the authority to invite amended or supplemental habeas corpus petitions in the interests of justice." (*Board of Prison Terms v. Superior Court* (2005) 130 Cal.App.4th 1212, 1239.)  An inexpertly drafted petition may also appropriately be denied without prejudice to filing a new petition that meets the requirements for stating a habeas claim.  (See *In re Swain* (1949) 34 Cal.2d 300, 304 (*Swain*).)  And when issuing an OSC, courts are also empowered "to explain [their] preliminary assessment of the petitioner's claims [and] restate inartfully drafted claims for purposes of clarity." (*Board of Prison Terms,* at p. 1239.)

In terms of specific pleading requirements sufficient to meet the standard for the appointment of counsel, as noted, " '[c]onclusory allegations made without any explanation of the basis for the allegations' " are inadequate to establish a petitioner's initial pleading burden in habeas proceedings.  (*Duvall, supra*, 9 Cal.4th at p. 474; compare *Patton, supra,* __Cal.5th at p. __ [2025 WL 666005, at *5] [conclusory allegations satisfy the

13

initial pleading burden in § 1172.6 proceedings].)  A habeas petition is required to "state fully and with particularity the facts on which relief is sought." (*Duval,* at p. 474.)  However, the initial pleading requirements during the informal phase of habeas proceedings "do[ ] not place upon an indigent prisoner who seeks to raise questions of the denial of fundamental rights in propria persona any burden of complying with technicalities; [they] simply demand[ ] of him a measure of frankness in disclosing his factual situation." (*Swain, supra,* 34 Cal.2d at pp. 303–304.)

The availability of procedures permitting amendment of an unrepresented petitioner's petition is exceptionally important in the context of RJA claims given the stated objective of the Legislature that litigants have meaningful opportunities to present their claims.  "The central purpose of the RJA is to provide meaningful remedies for proven racial discrimination in the administration of criminal justice. . . .  [T]hrough the amendments to the statute, the Legislature has made clear the importance of ensuring ' "efficient and effective" ' access to these remedies.  (Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Assem. Bill No. 1118 (2023–2024 Reg. Sess.) as amended May 18, 2023, p. 6; see also Assem. Conc. Sen. Amends. to Assem. Bill No. 1118 (2023–2024 Reg. Sess.) as amended May 18, 2023, p. 1.)" (*Wilson, supra,* 16 Cal.5th at p. 954.)  And ultimately, it is the intent of the Legislature to "*eliminate* racial bias from California's criminal justice system." (Stats. 2020, ch. 317, § 2, subd. (i), italics added.)

14

## DISPOSITION

Let a writ of mandate issue directing the respondent court to vacate its order denying McIntosh's petition for writ of habeas corpus and conduct further proceedings consistent with this opinion.

DO, Acting P. J.

WE CONCUR:

BUCHANAN, J.

RUBIN, J.

15